STEVEN JOHN BUSCHAUER, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 20820

December 20, 1990                                 804 P.2d 1046

*Wright & Stewart,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney, *Frank Ponticello,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ROSE, J.:

Appellant Steven John Buschauer (Buschauer) entered a plea of guilty to one count of involuntary manslaughter with use of a deadly weapon for accidentally shooting his wife when he was playing "fast draw" with his gun in his home. Buschauer stated that he did not know the gun was loaded, and the investigating detective concluded that Buschauer's story appeared consistent with the crime scene. The presentence report contained the following reference to a polygraph examination taken by Buschauer: "[f]urther investigation by this writer revealed that the defendant failed the polygraph test police gave him concerning his wife's death."

At the sentencing hearing, Buschauer's mother-in-law gave an oral victim's impact statement (herein, impact statement) pursuant to NRS 176.015(3). Defense counsel was not given prior notice of the contents of this statement. Buschauer's mother-in-law was not under oath and was not subjected to cross-examination. Ranging well beyond the impact of the crime, the statement referred to several prior bad acts by Buschauer, including: (1) that Buschauer had been jailed in California for spousal abuse; (2) that Buschauer's spouse had broken her leg once when

Buschauer was chasing her; (3) that Buschauer once had attempted to run his spouse over with a truck; and (4) that Buschauer physically abused the couple's daughter. The district court imposed on Buschauer the maximum possible sentence: 6 years for involuntary manslaughter, plus a consecutive 6 years for use of a deadly weapon. In doing so, the court referred to a "pattern of domestic violence."

On appeal, Buschauer contends that: (1) inclusion of polygraph results in the presentence report was error; (2) the impact statement by his mother-in-law was broader than is authorized by NRS 176.015(3), and, further, violated due process due to lack of notice, oath, and cross-examination; (3) errors in the presentence report denied him a fair sentencing due to suspect or impalpable evidence; and (4) defense counsel was ineffective for failing to present available mitigating evidence. This court further permitted Buschauer to file a supplemental opening brief raising a fifth contention: (5) that the court erred in enhancing the sentence based on use of a deadly weapon because this was an accidental shooting. We address contentions one, two and five, which present issues of first impression in this court. We need not reach the third and fourth assignments of error.

We first conclude that inclusion of the reference to the polygraph result in the presentence report was error. Polygraph results are inadmissible at trial absent written stipulation of the parties. Aguilar v. State, 98 Nev. 18, 21, 639 P.2d 533, 535 (1982). The State argues that a similarly strict rule is unnecessary at the sentencing stage, given the more relaxed standards for inclusion of evidence in the presentence report. We disagree. Evidence which is highly suspect or impalpable may not be considered by the court at sentencing. Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). The reliability of polygraph results is no greater, and the need for reliability no less, at sentencing than at trial. Therefore, in accord with other jurisdictions who have addressed the question, we conclude that the general rule limiting use of polygraph results at trial applies at sentencing as well. *See, e.g.,* Ex Parte Hinton, 548 So.2d 562 (Ala. 1989); State v. Zuck, 658 P.2d 162 (Ariz. 1982) (general rule of exclusion absent stipulation applies to sentencing phase); People v. Allen, 211 N.W.2d 533 (Mich.Ct.App. 1973).

The second assignment of error concerns the impact statement. Buschauer contends first that the scope of the statement given by Buschauer's mother-in-law exceeded the scope of the statement

authorized by NRS 176.015(3).[1] We disagree. The Nevada statute is similar in scope to statutes enacted in Arizona and California. *See* Ariz. Rev. Code § 13-702(F); Cal. Penal Code § 1191.1. NRS 176.015(3) authorizes the victim to express in a reasonable fashion any views concerning four subjects: the crime, the impact of the crime on the victim, the need for restitution, and "the defendant." The fourth subject, views concerning the defendant, goes beyond victim impact. *Cf.* W. Va. Code § 61-11A-2(b) (statement "shall relate solely to the facts of the case and the extent of any injuries . . . resulting directly from the crime"). "Views" on the defendant clearly encompass opinions as to the defendant's general character. Since an assessment of character usually turns in part on prior acts, this language permits some reasonable discussion of prior acts by the defendant. Buschauer does not contend that this is unconstitutional; his arguments in this case go only to the procedural protections afforded a defendant in connection with the impact statement.

Buschauer further contends that NRS 176.015(3) violates due process because it does not require notice, oath, and cross-examination in connection with the impact statement. Preliminarily, we note that an impact statement may be introduced at sentencing in two ways. First, where a victim cannot or does not wish to appear in court, the statement may be placed in written form in the presentence report pursuant to NRS 176.145. Second, the victim may give an oral statement at the sentencing hearing pursuant to NRS 176.015(3). When, as here, the second of the two alternatives is used, we must balance the dictates of due process with the legitimate interests of the victim, as expressed by the legislature. We conclude that the scope of due process protections depends on the scope of the impact statement. First we address the situation where the impact statement will refer only to three subjects: the facts of the crime, the impact on the victim, and the need for restitution. In this situation, we conclude that the victim, testifying as a witness before the court, must be sworn before testifying, but that cross-examination and prior notice of the contents of the impact statement normally are not

---

[1]Subsections (3)-(4) of NRS 176.015 provide in part:

3. Before imposing sentence the court shall afford the victim an opportunity to:

(a) Appear personally or by counsel; and

(b) Reasonably express any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution.

4. The prosecutor shall give to the victim reasonable notice of the hearing to impose sentence. . . .

required. In most cases, the defendant and defense counsel should already be aware of, and able to rebut, a statement whose scope is limited in this manner; (if, however, the victim's statement of the crime presents significant facts not previously raised, cross-examination and even a continuance prior to cross-examination, if requested, may be required). In this first situation, the State should inform defense counsel that an impact statement will be offered, but need not disclose the contents of the statement.

The second situation is where the impact statement includes references to specific prior acts of the defendant, as occurred in this case. Where the impact statement will refer to any prior acts by the defendant, we conclude that due process requires that the accuser be under oath, an opportunity for cross-examination and, perhaps most importantly, reasonable notice of the prior acts which the impact statement will contain. Our conclusion is supported by language in Booth v. Maryland, 482 U.S. 496 (1987), in which the U.S. Supreme Court held that use of an impact statement in capital cases is unconstitutional. In discussing impact statements, the *Booth* court indicated that the defendant must be given the opportunity to rebut the impact statement and stated that the defendant "[p]resumably would have the right to cross-examine the declarants." *Booth,* 482 U.S. at 506-07. A case interpreting the very similar Arizona statute further supports our conclusion. *See* State v. Asbury, 701 P.2d 1189 (Ariz.App. 1984) (vacating sentence; basic fairness and due process require that defendant have opportunity to cross-examine victim giving a statement at sentencing hearing). Buschauer also contends that hearsay should be inadmissible in an impact statement. Notice of the identity of the source of a hearsay statement reported in the impact statement is an important component of the defendant's right to rebut information at sentencing. Nevertheless, in accord with the allowance of hearsay in presentence reports, we decline to bar all hearsay testimony in an impact statement, provided the defendant receives adequate opportunity to rebut any hearsay statements.

As a practical matter, our decision will require the prosecutor to ascertain the scope of the impact statement from the victim prior to sentencing. This could be done when the prosecutor gives the victim notice of the sentencing hearing pursuant to NRS 176.015(4). If the defense is not given reasonable prior notice of an impact statement which refers to specific prior acts, then the defense will be entitled to a continuance to rebut the impact statement, unless the court can disclaim any reliance on the prior acts in imposing sentence.

Based in large part on the impact statement, the court referred to a pattern of wife abuse in sentencing Buschauer. Buschauer was not afforded notice or cross-examination to test the reliability of the impact statement, and the accuser was not under oath. As noted above, Buschauer's mother-in-law made several specific accusations, many of which were not included in the presentence report. Buschauer has raised some doubts as to whether the accusations of child and spousal abuse were completely accurate. Contrary to the impact statement, Buschauer told the court that it was his wife, not him, who was arrested in California for spousal abuse. This assertion is consistent with the presentence report. Defense counsel further represented, based on personal knowledge of the case, that charges of child abuse against Buschauer were dropped and that authorities had proceeded against Buschauer's wife until Buschauer refused to testify. Additionally, Buschauer specifically denied the allegations of wife and child abuse. We cannot be certain that inclusion of the polygraph result in the presentence report did not compromise Buschauer's credibility before the sentencing court. For these reasons, we cannot conclude that, when combined with the polygraph result, the lack of notice, oath and cross-examination in connection with the impact statement in this case constituted harmless error.

The last of Buschauer's contentions which we address concerns the legality of the sentence enhancement imposed on Buschauer for use of a deadly weapon. Buschauer contends that NRS 193.165[2] does not apply to this case because this was an unintentional shooting. The State responds that enhancement was proper because Buschauer used a gun in the commission of a crime, albeit an unintentional crime. We conclude that Buschauer is correct. First, the plain language of the statute—"use" of a weapon "in the commission of a crime"—indicates that the instrumentality must be used in conscious furtherance of a criminal objective. *See, e.g.,* People v. Chambers, 498 P.2d 1024 (Cal. 1972) (discussing definition of term "use" in statute creating deadly weapon sentence enhancement; quoting Webster International Dictionary's definition of "use" as the carrying out of a

---

[2]Subsection 1 of NRS 193.165, the deadly weapon enhancement statute, provides in part:

> 1. Any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for such crime.

*purpose* by means of an instrumentality). Second, this court will narrowly construe penal statues where they are ambiguous. Carter v. State, 98 Nev. 331, 334-35, 647 P.2d 374, 376 (1982). Although the State's literal interpretation of the statutory language is not unreasonable, it is one of two reasonable interpretations. Therefore, the statute is ambiguous and it must be read narrowly in accordance with Buschauer's equally tenable interpretation. Finally, Buschauer has cited to minutes of legislative committee meetings on this statute which indicate that several legislators expressed uncontradicted doubts about imposing the enhancement for the unintentional crime of involuntary manslaughter. For these reasons, we conclude that Buschauer's sentence was improperly enhanced because, by definition, his crime of involuntary manslaughter does not involve use of the weapon in conscious furtherance of a crime. We note, however, that the brandishing of a weapon during, and in conscious furtherance of, some other crime normally suffices to support an enhancement; this is true even if a defendant should happen accidentally to shoot someone during the course of the crime.

## CONCLUSION

The deadly weapon enhancement of NRS 193.165 does not apply to the unintentional crime of involuntary manslaughter. For this reason, we hereby vacate the enhanced portion of Buschauer's sentence for use of a deadly weapon. We further reverse Buschauer's six-year base sentence for involuntary manslaughter for two reasons. First, inclusion of the polygraph result in the presentence report was error. Additionally, due process required notice, oath, and cross-examination in connection with the victim's impact statement pursuant to NRS 176.015(3), because this statement included several accusations of specific prior acts by the defendant. Accordingly, we remand this case with instructions to delete the reference to the polygraph from the presentence report and, as in *Allen*, 211 N.W.2d at 536, for re-sentencing before a different judge.

YOUNG, C. J., STEFFEN, SPRINGER and MOWBRAY, JJ., concur.