Rose C. J.,
with whom Maupin and Douglas, JJ., agree, concurring in part and dissenting in part:
Although I agree with the majority that Summers is not entitled to relief, I dissent in regard to the majority’s conclusion that the Confrontation Clause and Crawford v. Washington[1] do not apply to capital penalty hearings. The majority opinion relies on a fifty-seven-year-old United States Supreme Court case that was decided well before any of the .United States Supreme Court’s more recent death penalty pronouncements. The United States Supreme Court *1336 has not addressed this precise issue but has given very clear indications that Williams v. New York[2] is no longer viable. I elect to follow those clear indications.
The Sixth Amendment to the United States Constitution provides that a criminal defendant enjoys the right “to be confronted with the witnesses against him.’ ’ Crawford holds that the admission of testimonial hearsay statements violates the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant.[3] The Supreme Court has yet to address whether Crawford has any bearing on sentencing proceedings or capital penalty hearings,[4] which, as discussed below, are not equivalent.
This court has already recognized that the right to confrontation applies in capital penalty hearings in at least one respect. In Lord v. State, we held that admission of a nontestifying codefendant’s confession generally violates a defendant’s right to confrontation.[5] Lord did not otherwise explore the scope of the right to confrontation at a capital penalty hearing.[6]
Further exploration of this question requires the initial recognition that a capital penalty hearing has two distinct aspects: an eligibility phase and a selection phase. The Supreme Court has identified and described these two aspects.[7] During the eligibility phase, “the jury narrows the class of defendants eligible for the death penalty.”[8] In the selection phase, “the jury determines whether to impose a death sentence on an eligible defendant.”[9] *1337 Moreover, the Supreme Court accords these two phases ‘ ‘differing constitutional treatment.”[10]
It is in regard to the eligibility phase that we have stressed the need for channeling and limiting the jury’s discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition. In contrast, in the selection phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination.[11]
This court has similarly distinguished two aspects of a capital penalty hearing, specifically in regard to the jury’s treatment of evidence. Although NRS 175.552(3) provides broadly that during a penalty hearing “evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to sentence,” the last type of evidence — “other matter” evidence — is not admissible to determine death eligibility.
“Other matter” evidence is not admissible for use by the jury in determining the existence of aggravating circumstances or in weighing them against mitigating circumstances. Such use of this evidence would undermine the constitutional narrowing process which the enumeration and weighing of specific aggravators is designed to implement.[12]
Therefore, jurors may consider “other matter” evidence only in the selection phase, after they have determined whether the defendant is eligible for a death sentence.[13]
As I will explain, a defendant is entitled to confront the witnesses against him in the eligibility phase of a capital penalty hearing because it is during this phase that the jury must determine whether the elements of capital murder have been established.
The majority observes that hearsay evidence is generally admissible in a capital penalty hearing under NRS 175.552(3), but such a statutory provision must yield to any contrary requirement under the Confrontation Clause. The majority also relies on the Supreme Court’s 1949 decision in Williams v. New York, which rejected the contention that a death sentence based on information from *1338 witnesses whom the defendant had not been permitted to confront violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[14] The Court was concerned that sentencing judges would lose access to a good deal of relevant information if they could only consider information “given in open court by witnesses subject to cross-examination.”[15] Williams, however, is nearly 60 years old and is no longer authoritative given the Supreme Court’s subsequent jurisprudence.
The Supreme Court has not directly addressed this issue since Williams. In pre-Crawford decisions, the Seventh and the Fourth Circuit Courts of Appeals have relied on Williams in concluding that the Confrontation Clause does not apply to capital penalty hearings.[16] Other federal courts have not considered the matter to be so settled,[17] and the Eleventh Circuit Court of Appeals has recognized a right to cross-examination at capital penalty hearings. [18] In other decisions predating Crawford, state courts have also reached differing conclusions on whether the Sixth Amendment right to confrontation applies to capital penalty hearings.[19]
The majority emphasizes that the Supreme Court has not overruled Williams. But this does not justify rigid adherence to Williams given the undeniable evolution of the Court’s jurisprudence on this matter over the succeeding decades as well as the weight of authority from other courts that have reached this issue. Williams long predates the Supreme Court’s many decisions since 1976 that recognize that death is different; these decisions have *1339 established separate penalty hearings in capital cases[20] and afforded a number of constitutional safeguards in those hearings.[21] In 1983, the Supreme Court justified its conclusion that expert testimony on future dangerousness is admissible at a capital penalty hearing by recognizing that “the rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the factfinder, who would have the benefit of cross-examination and contrary evidence by the opposing party.”[22] Given all this subsequent case law, Williams's conclusion that no distinction need be made between capital penalty hearings and noncapital sentencing proceedings[23] is no longer viable.[24]
Indeed, in Specht v. Patterson in 1967, the Supreme Court expressly declined to extend Williams to a “radically different situation’ ’ and held that the right to confrontation, among others, applied at a sentencing hearing where the sentence might be based on “a new finding of fact.”[25] In 1981, the Court noted the similarity between the sentencing hearing in Specht and a capital penalty hearing.[26] And in 2002 in Ring v. Arizona, the Court held that aggravating circumstances function as elements of capital murder and under the Sixth Amendment right to a jury trial, must be found by jurors, not judges.[27] Consequently, Specht and Ring are more apposite than Williams to the issue of the Confrontation Clause’s application to the eligibility phase of a capital penalty hearing.
Given the trend in the Supreme Court’s decisions over the last four decades and its specific holdings in Ring and Crawford, I con- *1340 elude that the Sixth Amendment right to confrontation applies to evidence presented during the eligibility phase of a capital penalty hearing. This conclusion is supported by a number of other judicial decisions by both state courts[28] and federal district courts.[29]
On the other hand, I see no basis in either Ring or Crawford to extend the Sixth Amendment confrontation right to the selection phase of a capital penalty hearing.[30] As stated above, the Supreme Court has accorded the two aspects of capital penalty hearings “differing constitutional treatment,”[31] stressing “the need for channeling and limiting the jury’s discretion to ensure that the death penalty is a proportionate punishment’ ’ only in regard to the eligibility phase, while permitting “broad inquiry” in the selection phase.[32] The selection phase of a capital penalty hearing is analogous to a noncapital sentencing hearing, where the sentencer decides the actual sentence based on the offense, which has already been established, and its accompanying sentencing parameters.[33] And the weight of authority is that the Confrontation Clause and Crawford do not extend to noncapital sentencing proceedings.[34]1 *1341 therefore conclude that the right to confrontation does not apply to evidence presented during the selection phase of a capital penalty hearing.
In this case, however, the penalty hearing was conducted in a single proceeding, without any bifurcation of the eligibility and selection phases. So the issue is how to apply the Confrontation Clause and Crawford to such an unbifurcated capital penalty hearing.
This court has never required bifurcated proceedings in capital penalty hearings.[35] Yet we have also never precluded district courts from bifurcating penalty hearings, and district courts certainly have the discretion to do so. Indeed, bifurcation is the better practice since it prevents the possibility that jurors will be improperly influenced by “other matter” evidence in determining the existence and the weight of aggravating circumstances and mitigating circumstances. And bifurcation is also better because it provides two distinct proceedings in which the right to confrontation first applies and then does not apply. Given the practical difficulties that arise when the two aspects of a penalty hearing are not separated into distinct proceedings, I would hold that when a capital penalty hearing is not bifurcated, the Confrontation Clause and Crawford must apply to the entire hearing.
When a capital penalty hearing is bifurcated, the eligibility phase remains insulated from the broad range of “other matter” evidence admissible during the selection phase. Furthermore, bifurcation permits confrontation issues to be dealt with solely in the eligibility phase, when the jury is still determining whether the elements of capital murder exist. Once that determination has been made, presentation of evidence in the selection phase can then proceed without confrontation concerns. When a penalty hearing is not bifurcated, the State’s eligibility-phase evidence and selection-phase evidence are mingled in a single presentation, giving rise to the risk that the jury’s initial death-eligibility determination will be affected by selection-phase evidence that is irrelevant to death eligibility.
This court has recognized this risk previously but held that appropriate instructions can meet the concern that jurors might consider improper evidence in determining death eligibility.[36] This approach is no longer satisfactory, however, because the Ring and Crawford decisions present us with heightened constitutional, as well as practical, concerns. Ring has accentuated the gravity of the jury’s task in determining the elements of capital murder. We must *1342 not permit this task to be improperly affected either by “other matter’ ’ evidence or by testimonial hearsay evidence that has not been subjected to cross-examination. These risks cannot adequately be addressed through devising additional instructions or requiring courts to determine which evidence presented by the State is subject to an intermittently arising right of confrontation on the part of the defendant over the course of an unbifurcated penalty hearing.
Bifurcation precludes these risks and presents a workable solution that promotes the efficient administration of justice.[37] An unbi-furcated hearing does not. Thus, I conclude that where a hearing is unbifurcated, the Confrontation Clause and Crawford must apply to evidence admitted during the entirety of the hearing — both its eligibility and selection aspects.
The majority contends that I am requiring capital penalty hearings to be bifurcated. I have made no such requirement and have merely concluded that Crawford’s protections should be applied differently depending on whether the proceeding is bifurcated. Accordingly, here, because Summers’s capital penalty hearing was not bifurcated, his right to confrontation applied to testimonial hearsay throughout the entire hearing.
Further, I disagree with the majority that limiting instructions will sufficiently protect a defendant against a constitutional violation in a death penalty proceeding. The discrete evidentiary distinctions made in the eligibility and selection phases of a capital penalty hearing are not easily compartmentalized. In addition, emotions are elevated in most death penalty cases making it much more difficult to ignore certain evidence for one purpose but then use that same evidence for another purpose.
As has often been said, death is different. With regard to jurors’ ability to follow limiting instructions in this difficult and emotional area, I believe “that the practical and human limitations of the jury system cannot be ignored.”[38] Eligibility determinations in death penalty cases are situations where the system’s fallibility must be conceded. Accordingly, I disagree with the majority, and I conclude that limiting instructions cannot cure this potential for violation of constitutional rights in death penalty hearings.
The final question is whether Summers’s confrontation rights were violated. Summers contends that the admission of documentary exhibits consisting of nearly 835 pages during his penalty hearing violated his confrontation rights. These documents included LVMPD records and arrest reports; a 1996 judgment of *1343 conviction for robbery and possession of a stolen vehicle; juvenile and family court records; LVMPD gang unit investigation cards; and inmate disciplinary reports.[39]
However, Summers has not demonstrated any prejudice. He not only initially failed to provide this court with copies of the documents on appeal,[40] but he has failed to specify any statements within these documents that violated the Confrontation Clause or to explain how they were prejudicial. Review of the documents reveals that they do include some statements containing testimonial hearsay. Thus, these statements were likely admitted in violation of the Confrontation Clause and Crawford.
Nevertheless, this court may deem a constitutional error harmless where it is clear beyond a reasonable doubt that the verdict rendered was “ ‘surely unattributable to the error.’ ”[41] I am confident that any Confrontation Clause errors that occurred here were harmless beyond a reasonable doubt. Even if the testimonial hearsay had been stricken, the basic information damaging to Summers’s case still would have been presented to the jury, i.e., the nature and number of his prior arrests, convictions, and inmate disciplinary violations. Also, it is pertinent that Summers was sentenced only to a term of life in prison without the possibility of parole, not death, even though the jury found that the aggravating circumstances outweighed the mitigating circumstances. Given Summers’s extensive criminal history and the nature of the murder in this case, it is clear beyond a reasonable doubt that even if testimonial statements within the documentary exhibits had been excluded from evidence, the jury still would not have imposed a sentence of life with the possibility of parole.
Therefore, I concur with the majority’s conclusion that reversal of Summers’s sentence is not warranted.

 541 U.S. 36 (2004).

 337 U.S. 241 (1949).

 541 U.S. at 68-69.

 See U.S. v. Katzopoulos, 437 F.3d 569, 574 (6th Cir. 2006) (“An issue unaddressed by Crawford is whether the Sixth Amendment right to confront witnesses applies similarly at sentencing.”).

 107 Nev. 28, 43-44, 806 P.2d 548, 557-58 (1991) (applying Bruton v. United States, 391 U.S. 123, 137 (1968)).
This court has also recognized a limited right to cross-examination during a criminal sentencing proceeding. See Buschauer v. State, 106 Nev. 890, 894, 804 P.2d 1046, 1048-49 (1990) (holding that where a victim-impact statement refers to specific prior acts of the defendant, due process requires, among other things, an opportunity to cross-examine the accuser, but declining to bar all hearsay evidence in an impact statement).

 Cf. Kaczmarekv. State, 120 Nev. 314, 335-36, 91 P.3d 16, 31 (2004) (concluding that barring a defendant from cross-examining a witness regarding her opinion on the proper sentence during a capital penalty hearing did not violate the Sixth Amendment).

 Buchanan v. Angelone, 522 U.S. 269, 275 (1998).

 Id.

 Id.

 Id.

 Id. at 275-76.

 Holloway v. State, 116 Nev. 732, 746, 6 P.3d 987, 997 (2000) (citation omitted); see abo Evans v. State, 117 Nev. 609, 635-37, 28 P.3d 498, 516-17 (2001).

 Hollaway, 116 Nev. at 746, 6 P.3d at 997.

 337 U.S. 241, 242-52 (1949).

 Id. at 250.

 Szabo v. Walls, 313 F.3d 392, 398 (7th Cir. 2002) (citing Williams for the proposition that “the Supreme Court has held that the Confrontation Clause does not apply to capital sentencing”); Bassette v. Thompson, 915 F.2d 932, 939 (4th Cir. 1990).

 See Maynard v. Dixon, 943 F.2d 407, 414 n.5 (4th Cir. 1991) (recognizing that conflicting authority exists as to whether the Confrontation Clause applies in capital penalty hearings); U.S. v. Lee, 374 F.3d 637, 649-50 (8th Cir. 2004) (addressing whether appellant’s confrontation rights were violated during his capital penalty hearing where the government did not contest that he had such rights); U.S. v. Hall, 152 F.3d 381, 406 (5th Cir. 1998) (assuming, without deciding, “that the Confrontation Clause applies to the sentencing phase of a capital trial”), abrogated on other grounds by United States v. Martinez-Salazar, 528 U.S. 304 (2000).

 U.S. v. Brown, 441 F.3d 1330, 1361 n.12 (11th Cir. 2006); Proffitt v. Wainwright, 706 F.2d 311 (11th Cir. 1983) (concluding that the Confrontation Clause extends to capital penalty hearings in regard to the right to cross-examine the author of a psychiatric report; limiting its holding in Proffitt v. Wainwright, 685 F.2d 1227, 1251-55 (11th Cir. 1982)).

 Compare, e.g., Sivak v. State, 731 P.2d 192, 211 (Idaho 1986) (holding that a capital defendant does not have confrontation rights in a penalty hearing), and State v. Grisby, 647 P.2d 6, 15-16 (Wash. 1982), with Walton v. State, 481 So. 2d 1197, 1200 (Fla. 1985).

 See Gregg v. Georgia, 428 U.S. 153, 195 (1976) (stating that concerns that the death penalty not be imposed in an arbitrary or capricious manner “are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information”).

 E.g., Ring v. Arizona, 536 U.S. 584 (2002) (holding that the Sixth Amendment requires a jury to find the facts rendering a defendant eligible for death); Bullington v. Missouri, 451 U.S. 430, 446 (1981) (holding that the Double Jeopardy Clause applies to capital penalty decisions); Gardner v. Florida, 430 U.S. 349, 362 (1977) (plurality opinion) (holding that due process was denied when a death sentence was based in part on information that a defendant had no opportunity to deny or explain).

 Barefoot v. Estelle, 463 U.S. 880, 898 (1983) (emphasis added).

 See 337 U.S. at 251.

 See Hatch v. State of Okl., 58 F.3d 1447, 1465 (10th Cir. 1995) (“The Court has since discredited some of the logic that undergirded its decision in Williams.”), overruled in part on other grounds by Daniels v. U.S., 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

 386 U.S. 605, 608-10 (1967).

 See Bullington, 451 U.S. at 446.

 536 U.S. at 609.

 See State v. McGill, 140 P.3d 930, 942 (Ariz. 2006) (recognizing that confrontation rights extend to the aggravation phase, but not to the penalty phase, of a bifurcated capital penalty hearing); Rodgers v. State, 948 So. 2d 655, 663-65 (Fla. 2006); Russeau v. State, 171 S.W.3d 871, 880-81 (Tex. Crim. App. 2005), cert. denied, 126 S. Ct. 2982 (2006).

 See U.S. v. Johnson, 378 F. Supp. 2d 1051, 1060-62 (N.D. Iowa 2005) (applying confrontation rights to the eligibility phase); U.S. v. Bodkins, 2005 WL 1118158, at *4-5 (W.D. Va. May 11, 2005) (same); U.S. v. Jordan, 357 F. Supp. 2d 889, 902-03 (E.D. Va. 2005) (same); see also U.S. v. Mills, 446 F. Supp. 2d 1115, 1135 (C.D. Cal 2006) (applying confrontation rights to all phases of a capital penalty hearing).
I am aware of but one court since Ring and Crawford that has reached a result that may be contrary to this conclusion. See Call v. Polk, 454 F. Supp. 2d 475, 501-04 (W.D.N.C. 2006) (concluding that a state court did not render a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court).

Ring, 536 U.S. at 597 n.4 (noting that Ring did not argue the Sixth Amendment required the jury to determine whether to impose death and that the plurality opinion in Proffitt v. Florida, 428 U.S. 242, 252 (1976), observed that such a requirement has never been suggested).

 Buchanan, 522 U.S. at 275.

 Id. at 275-76; cf. Hollaway, 116 Nev. at 746, 6 R3d at 997.

 Selection-phase evidence, of course, to be admissible must still be reliable and relevant, and the danger of unfair prejudice must not substantially outweigh the probative value of the evidence. See Hollaway, 116 Nev. at 746, 6 P.3d at 997; Parker v. State, 109 Nev. 383, 390-91, 849 P.2d 1062, 1066-67 (1993).

 See, e.g., U.S. v. Stone, 432 F.3d 651 (6th Cir. 2005), cert. denied, 127 S. Ct. 129 (2006); U.S. v. Roche, 415 F.3d 614, 618 (7th Cir. 2005), cert. denied, 546 U.S. 1024 (2005); U.S. v. Brown, 430 F.3d 942, 943-44 (8th Cir. 2005); U.S. v. Littlesun, 444 F.3d 1196, 1199-1200 (9th Cir. 2006), cert. denied, 127 S. Ct. 248 (2006).

 Johnson v. State, 118 Nev. 787, 806, 59 P.3d 450, 462 (2002); see also Weber v. State, 121 Nev. 554, 584, 119 P.3d 107, 128 (2005); McConnell v. State, 120 Nev. 1043, 1061-62, 102 P.3d 606, 619 (2004).

 See Evans, 117 Nev. at 635-37, 28 P.3d at 516-17; see also Hollaway, 116 Nev. at 746, 6 P.3d at 997.

 See U.S. v. Mayhew, 380 F. Supp. 2d 936 , 957 (S.D. Ohio 2005) (recognizing that bifurcation of a capital penalty hearing alleviates concerns over the Confrontation Clause and Crawford).

 Bruton v. United States, 391 U.S. 123, 135 (1968).

 In Thomas v. State, 114 Nev. 1127, 1147-48, 967 P.2d 1111, 1124-25 (1998), this court held that prison inmate disciplinary reports may be admissible under the business records exception to the hearsay rule. See NRS 51.135. In light of Crawford, the continuing viability of Thomas for this proposition is doubtful where the disciplinary reports contain testimonial statements.

 See NRAP 10(a)(1); NRAP 11(a)(1).

 Flores v. State, 121 Nev. 706, 721, 120 P.3d 1170, 1180 (2005) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).