ABELL DIEUDONNE, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 54491

January 27, 2011                                        245 P.3d 1202

*David M. Schieck*, Special Public Defender, and *JoNell Thomas*,
Deputy Special Public Defender, Clark County, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Susan M. Pate*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, CHERRY, J.:

In this appeal, we consider whether a criminal defendant holds an absolute right to be sentenced by the judge who accepted his or

her plea. We conclude that there is no such right absent an express agreement or indication by the defendant that the plea was entered with that expectation. In this case, there was no such express agreement, and we decline to imply one based on the judge's use of a personal pronoun during the plea canvass, particularly given the defendant's failure to object to proceeding with sentencing before a different judge. We also take this opportunity to reaffirm our holding in *Buschauer v. State*, 106 Nev. 890, 893, 804 P.2d 1046, 1048 (1990), that witnesses offering oral victim impact statements must be sworn. While the victim impact witnesses in this case were not sworn, we cannot say that this error rises to the level of plain error warranting a new sentencing hearing. Accordingly, we affirm the judgment of conviction.

## *FACTS*

Appellant Abell Dieudonne was charged in connection with the robbery and murder of Giovanna Simmons. The State alleged that Dieudonne and Semairo McNair conspired to rob Simmons and burglarize her house. Specifically, the State alleged that McNair unlawfully entered Simmons's residence with the intent to commit robbery, brandished a loaded weapon to forcefully take Simmons's money and marijuana, and subsequently shot and killed her while Dieudonne acted as the lookout and getaway driver during the commission of the crimes. The State charged Dieudonne with conspiracy to commit burglary, burglary while in possession of a firearm, conspiracy to commit robbery, attempted robbery with the use of a deadly weapon, conspiracy to commit murder, and murder with the use of a deadly weapon.

Dieudonne entered a plea before Judge Elizabeth Gonzalez, with the terms of the plea agreement providing that Dieudonne would plead guilty to conspiracy to commit robbery, robbery with the use of a deadly weapon, and second-degree murder, and the State would not oppose the sentence for the conspiracy charge running concurrently to the sentences for the other charges. Dieudonne indicated that he understood the extent of the district court's discretion as to the range of sentences and also acknowledged that he had not received any promises with regard to sentencing that were not contained in his plea agreement. During the plea canvass, Judge Gonzalez repeatedly used the personal pronoun "I" when explaining the court's sentencing discretion but never directly referenced that she would impose the sentence.

Before the sentencing hearing, the case was transferred from Judge Gonzalez to Judge Douglas Smith.[1] At the sentencing hearing, Judge Smith inquired of defense counsel as to whether there

---

[1]The record is silent as to the reason for the transfer of the case.

was any legal reason why the court should not go forward with sentencing that day, and counsel responded in the negative. Defense counsel did not object to Judge Smith presiding over the hearing.

During the sentencing hearing, the victim's sisters and friends gave victim impact statements. These statements contained profanity, threats, and the use of a racially based disparaging term directed at Dieudonne.

Judge Smith sentenced Dieudonne to serve a term of 12 to 72 months on the conspiracy-to-commit-robbery charge, two consecutive terms of 60 to 180 months on the robbery-with-use-of-a-deadly-weapon charge, and a term of 120 months to life on the second-degree murder charge. The sentences for each of the counts were ordered to run consecutively. Dieudonne's counsel expressed surprise that the district court ordered the sentence on conspiracy to commit robbery to be served consecutively and noted that Judge Smith was not the judge who took the plea. Thereafter, Judge Smith decided to make the conspiracy sentence concurrent to the robbery and murder sentences and entered an amended judgment of conviction. At the time, Judge Smith acknowledged that Dieudonne had probably anticipated that Judge Gonzalez would sentence him.

On appeal, Dieudonne contends that: (1) under the circumstances, he was entitled to be sentenced by the judge who took his guilty plea; and (2) he was entitled to a sentencing hearing in which those testifying were sworn in, and in which testimony was not plagued by racial epithets and profanity. We affirm the district court on all issues because we conclude that there was no error with regard to the first issue raised on appeal, and because the error associated with the second issue did not amount to plain error.[2]

## DISCUSSION

### Failure to object

Because Dieudonne failed to object to either being sentenced by Judge Smith or to any of the victim impact statements, we review Dieudonne's arguments on appeal for plain error only. *Vega v. State*, 126 Nev. 332, 338, 236 P.3d 632, 636 (2010). While failure to object generally precludes appellate review, we have discretion to address any errors that were plain and that affected the de-

---

[2]The State argues that Dieudonne cannot appeal from the amended judgment of conviction, as he is not an aggrieved party pursuant to NRS 177.015. We need not resolve this jurisdictional issue because Dieudonne timely appealed from the judgment of conviction and there are no separate issues related to the amended judgment.

fendant's substantial rights. *Gallego v. State*, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001). "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). To amount to plain error, an error must be so unmistakable that it is apparent from a casual inspection of the record. *Vega*, 126 Nev. at 338, 236 P.3d at 637 (internal quotations and citations omitted). Dieudonne must demonstrate that an error was prejudicial in order to establish that it affected his substantial rights. *Gallego*, 117 Nev. at 365, 23 P.3d at 239.

*Sentencing requirements*

Dieudonne contends that, as a matter of due process, he was entitled to be sentenced by Judge Gonzalez because she took his guilty plea, remains available as a sitting judge, and has retained discretion over the sentence to be imposed. Furthermore, Dieudonne argues that he entered his guilty plea with an expectation that he would be sentenced by Judge Gonzalez. Dieudonne relies on *People v. Arbuckle*, 587 P.2d 220, 224-25 (Cal. 1978), for support of this contention. The State asserts that Dieudonne was well aware that he was not guaranteed to be sentenced by any particular judge because the plea agreement does not contain any such promise. While this is an issue of first impression for this court, several other jurisdictions have addressed the issue.

In the case on which Dieudonne relies, *Arbuckle*, the California Supreme Court confronted this very situation. There, the defendant pleaded guilty to a charge of assault with a deadly weapon with intent to commit murder in exchange for a dismissal of assault-with-a-deadly-weapon and possession-of-marijuana charges. *Id.* at 221. The judge who accepted the plea was then transferred to another department before sentencing. *Id.* at 222. During sentencing, the defendant objected to the imposition of the sentence by another judge and requested a transfer. *Id.* His request was denied, and he was sentenced by the second judge. *Id.*

On appeal, the defendant asserted that it was an implicit term in the plea bargain that the judge who took the plea would be the judge who conducted the sentencing. *Id.* at 224. The court agreed, concluding that the judge's repeated use of the personal pronoun "I" supported the conclusion that the plea bargain "was entered in expectation of and in reliance upon sentence being imposed by the same judge." *Id.* The *Arbuckle* court determined that:

> As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence

will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea.

*Id.* at 224-25.

The *Arbuckle* court concluded that the sentence imposed by another judge could not be allowed to stand because the defendant had been denied that aspect of the plea bargain. *Id.* at 225. Finally, the court stated that if internal court administrative practices render it impossible for the defendant to be sentenced by the judge who took the plea, then the defendant should be permitted to choose between either withdrawing the plea or proceeding before a different available judge. *Id.* at 225 & n.5.

Since *Arbuckle* has been decided, it has been interpreted by a multitude of California Court of Appeal cases, with varying results.

Some courts of appeal in California have applied *Arbuckle* to the outmost extent of the holding, concluding that there is an implied term in plea bargains that the sentence will be imposed by the judge who accepted the plea. *See People v. Letteer*, 127 Cal. Rptr. 2d 723, 732-34 (Ct. App. 2002) (determining that ''sentencing by a different judge constitutes a significant deviation from the terms of the plea bargain''), *disapproved of on other grounds by Peracchi v. Superior Court*, 70 P.3d 1054, 1062 n.6 (Cal. 2003); *People v. Rosaia*, 203 Cal. Rptr. 856, 861 (Ct. App. 1984) (rejecting the argument that the right to be sentenced by the same judge who took the plea, as provided in *Arbuckle*, is not applicable when the defendant has failed to object to sentencing before a different judge, and concluding that the record must indicate that the defendant knew he had the right to be sentenced by the same judge who took his plea but waived that right by his conduct), *disapproved of on other grounds by People v. Horn*, 261 Cal. Rptr. 814, 819-20 (Ct. App. 1989). However, other California Courts of Appeal have refused to imply in all plea agreements the term that the judge who accepts the plea must also impose the sentence.

''As many courts have recognized, *Arbuckle* does not stand for the blanket proposition that under all circumstances, a defendant is entitled to assert his or her right to have the same judge who presided over the plea hearing also preside over the sentencing hearing.'' *People v. Hsu*, 85 Cal. Rptr. 3d 566, 574 (Ct. App. 2008). '' 'It is not always an implied term of a plea bargain that the judge who accepts the plea will impose the sentence; rather, the record must affirmatively demonstrate some basis upon which

a defendant may reasonably expect that the judge who accepts the plea will. retain sentencing discretion.'" *People v. Serrato*, 247 Cal. Rptr. 322, 323-24 (Ct. App. 1988) (quoting *People v. Ruhl*, 214 Cal. Rptr. 93, 96 (Ct. App. 1985)); *see also People v. McIntosh*, 98 Cal. Rptr. 3d 901, 902 (Ct. App. 2009) (concluding that when, for reasons beyond the court's or the prosecutor's control, the judge who accepted the plea becomes unavailable, there is no automatic right for the defendant to withdraw his or her plea unless the evidence demonstrates that the identity of the sentencing judge was a material element in the defendant's decision to plead guilty).

Additionally, courts in other jurisdictions have also declined to conclude that a defendant has an absolute right to be sentenced by the judge who accepted the plea. As stated by the United States Court of Appeals for the Eighth Circuit, "there is no independent federal right to be sentenced by the same judge that took a guilty plea and [we] find no constitutional provision that guarantees such a right." *Taylor v. Bowersox*, 329 F.3d 963, 969 (8th Cir. 2003); *see also United States v. Russell*, 776 F.2d 955, 959 (11th Cir. 1985) (holding that the defendant is not entitled to be sentenced by the judge who took his plea when the judge made no promise to sentence him); *United States v. Pizzo*, 453 F.2d 1063, 1065 (3d Cir. 1972) (holding that when the defendant admitted that he pleaded guilty for reasons other than to have the judge who took his plea sentence him, the defendant could properly be sentenced by a different judge); *State v. Carson*, 597 P.2d 862, 865 (Utah 1979) (stating that "[w]hile it is preferable that the judge who takes a defendant's plea be the same as the judge who sentences that defendant, it is not essential that they be the same" (footnote omitted)).

We determine this line of cases that rein in *Arbuckle* to be more persuasive. We conclude that the decision in *Arbuckle* goes too far to the extent that it recognizes an absolute right to be sentenced by the judge who accepted the plea. We cannot agree that it is always an implied term of a plea bargain that the judge who accepts the plea will impose the sentence. If we accepted Dieudonne's argument, a defendant could claim, based only on an unexpressed unilateral expectation, that he or she has the right to be sentenced by the judge who accepted the plea. This would allow one party to profoundly affect the proceedings with nothing more than a bare assertion.

Allowing a defendant to assert such a right prior to any sentencing would interfere with the district courts' broad authority to administer their own caseloads, *see Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 439-40 (2007) (the judiciary has

broad inherent powers to carry out its basic functions, to administer its own affairs, and to perform its duties), and this would exacerbate preexisting difficulties in the district court that often arise from the scheduling assignments of district court judges.

Allowing a defendant to assert such a right after a sentence has been imposed would essentially permit a defendant to try his or her luck by asking to be resentenced by the judge who accepted the plea. Just as a defendant is not guaranteed any particular sentence, he or she is not automatically entitled to a second sentencing hearing before a particular judge. *See Randell v. State*, 109 Nev. 5, 8, 846 P.2d 278, 280 (1993) (the district court has wide discretion in its sentencing decision). We thus conclude that without some explicit agreement, the district court need not honor a defendant's unexpressed expectation.

We are well aware that in some circumstances, a defendant considers the judge when deciding whether to enter a guilty plea. We acknowledge that the identity of the sentencing judge may be of such significance that the defendant would not enter the plea without a guarantee of being sentenced by the judge who accepted the plea. Although it is preferable that the judge who takes a defendant's plea be the same judge who sentences that defendant, this court will not mandate such a requirement. Certainly, where the judge who accepts a plea is available, there may be a reasonable expectation that he or she will impose the sentence, but it is not enough for a defendant to imply an absolute right to be sentenced by the same judge who took the plea. At the time of sentencing, there must be an acknowledgment that a promise made by the court or by the prosecutor led to an express agreement that the defendant would be sentenced by that particular jurist. A clear statement must be made that the plea was entered in expectation of, and in reliance upon, the sentence being imposed by the same judge who took the plea in order to assert such a right.

While the circumstances of this case—the judge's repeated use of the personal pronoun throughout the plea canvass—are similar to those in *Arbuckle*, Dieudonne failed to demonstrate any expectation of, or reliance on, being sentenced by the same judge who took his plea, and we decline to imply such an expectation based solely on the judge's use of a personal pronoun during the plea canvass. Upon complete review of the record in this case, we fail to see any evidence that a promise or an agreement arose that Dieudonne would be sentenced by Judge Gonzalez. Dieudonne's failure to object further supports the conclusion that the plea was, in fact, not entered into in reliance on the sentencing judge being the same as the judge who accepted the plea.

Based on the foregoing, we conclude that it was not error for Dieudonne to be sentenced by a judge other than the judge who accepted his guilty plea.

*Victim impact statements*

Dieudonne contends that the district court improperly failed to swear in the victim impact witnesses and violated his due process rights by allowing the victim impact witnesses to testify in a certain manner. With respect to the failure to swear in the witnesses, we agree, and we reaffirm our holding in *Buschauer v. State*, 106 Nev. 890, 893, 804 P.2d 1046, 1048 (1990), that when a witness gives an oral victim impact statement at sentencing, the witness must be sworn before testifying. The district court erred in failing to swear in the witnesses. We further conclude that this error was plain, as the law is clear that witnesses giving an oral victim impact statement must first be sworn. However, we cannot conclude that this error was prejudicial and, therefore, that it affected Dieudonne's substantial rights.[3] There is no indication in the record that the district court based its sentencing decision on the unsworn victim impact statements. In sentencing Dieudonne, Judge Smith expressed that Dieudonne's criminal history was the primary reason for his decision and made no reference to the victim impact statements. Further, "[t]he district court is capable of listening to the victim's feelings without being subjected to an overwhelming influence by the victim in making its sentencing decision." *Randell*, 109 Nev. at 8, 846 P.2d at 280.

Dieudonne further contends that the district court violated his due process rights by allowing victim impact speakers to use racial epithets, curse words, and threats directed at him, and in allowing the speakers to abuse the judicial system by acting without decorum. NRS 176.015(3) grants certain victims of crime an opportunity to "[r]easonably express any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution." NRS 176.015(3)(b). "NRS 176.015(3) is similar in scope to statutes enacted in Arizona and California. Courts in both states take expansive views of their victim impact statutes, concluding that they are designed to grant victims expanded rights, rather than to limit the rights of victims." *Randell*, 109 Nev. at 7, 846 P.2d at 280 (citations omitted). However, while the statute is broad in terms of what a victim can express, it is not without limitations—racially charged comments, threats, and curs-

---

[3]When properly preserved for appellate review, we analyze the erroneous admission of victim impact statements for harmless error. *Sherman v. State*, 114 Nev. 998, 1014, 965 P.2d 903, 914 (1998). However, because Dieudonne did not object at trial, thus failing to preserve the error for review, we review the district court's failure to swear in the victim impact witnesses for plain error. *Vega v. State*, 126 Nev. 332, 338, 236 P.3d 632, 638 (2010).

·ing are not appropriate. *See, e.g., People v. Polite,* 45 Cal. Rptr. 845, 850 (Ct. App. 1965) (stating that "the trial judge owes a duty to see that proper demeanor is maintained"); *State v. Pelletier,* 786 A.2d 609, 611-13 (Me. 2001) (affirming a contempt finding for a serious breach of decorum when the defendant wore a vulgar T-shirt to his arraignment in front of a heavily populated courtroom). Pursuant to the Nevada Code of Judicial Conduct, judges are required to manage the courtroom to limit, as much as possible, behavior such as racially charged comments, threats, and curses. *See* NCJC Canon 2, Rule 2.8 (stating that "[a] judge shall require order and decorum in proceedings before the court" and that a judge shall require "dignified" and "courteous" behavior from those "subject to the judge's direction and control"). This decorum is to be maintained at all times, including during victim impact statements. *See id.*

Because Dieudonne's counsel failed to object to the victim impact testimony, we review the issue under a plain error analysis as opposed to an abuse of discretion standard. *See Vega v. State,* 126 Nev. 332, 338, 236 P.3d 632, 638 (2010). Dieudonne contends that prejudice affecting his substantial rights resulted from the improper victim impact statements. While we agree that the victim impact statements contained instances of harsh and inappropriate language, we conclude that this language does not render the proceeding fundamentally unfair. The record reflects that Judge Smith's sentencing decision was not affected by the inappropriate statements. *See Randell,* 109 Nev. at 7-8, 846 P.2d at 280 ("'[J]udges spend much of their professional lives separating the wheat from the chaff and have extensive experience in sentencing, along with the legal training necessary to determine an appropriate sentence.'"(quoting *People v. Mockel,* 276 Cal. Rptr. 559, 563 (Ct. App. 1990))). While Dieudonne contends that the prejudice from these statements is reflected in the fact that he, as the less culpable defendant, received a much harsher sentence than his co-defendant for the same offenses, the differences in the sentences do not demonstrate prejudice. *See Nobles v. Warden,* 106 Nev. 67, 68, 787 P.2d 390, 391 (1990) (stating that sentencing is individualized, and there is no legal requirement that the district court sentence codefendants identically). Accordingly, we conclude that the admission of the victim impact statements did not affect Dieudonne's substantial rights.

For the foregoing reasons, we affirm the judgment of conviction.

Douglas, C.J., and Saitta, Gibbons, Pickering, Hardesty, and Parraguirre, JJ., concur.