IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DASHAN PERRIGAN, | § | |
| | § | No. 280, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2012004283(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: March 8, 2023
Decided:  March 27, 2023

Before **SEITZ,** Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)  In a written plea agreement, Dashan Perrigan agreed to plead guilty to second degree murder and possession of a firearm during the commission of a felony.  In exchange for the guilty plea, the State agreed to recommend a sentence of incarceration not to exceed twenty-five years. Perrigan acknowledged in the plea agreement and during a colloquy with the court that the State's recommendation was just that–a recommendation.  He agreed that the ultimate sentence he received was up to the sentencing judge.  A Superior Court judge accepted the plea and ordered a

presence report. A different Superior Court judge imposed a thirty-year sentence of incarceration-five years longer than the State's recommendation.

(2) On appeal, Perrigan contends that, as part of the plea agreement, the judge who accepted his plea agreed to conduct the sentencing. According to Perrigan, the judge who accepted the plea used personal pronouns when referring to the sentencing hearing, which meant that he agreed to sentence him. The State counters that there was no promise—express or implied—that the same judge would sentence Perrigan, and neither State nor federal law imposes such a requirement. We agree with the State and affirm the Superior Court's judgment.

(3) Wilmington City Police arrested Perrigan in 2020 for the fatal shooting of Michael Reams. A New Castle County grand jury indicted Perrigan on three charges: murder in the first degree, possession of a firearm during the commission of a felony, and possession of a firearm by a person prohibited. As a murder case, Perrigan's case was specially assigned to Superior Court Judge Francis J. Jones, Jr. (the "Plea Judge") "for all purposes until final disposition."[1]

(4) The State later offered, and Perrigan accepted, an agreement to plead guilty to second degree murder and possession of a firearm during the commission of a felony. In exchange, the State would recommend a term of incarceration not

---

[1] App. to Opening Br. at A1, A8. According to Superior Court practice, criminal cases are not typically assigned to a specific judge. Murder cases, however, are typically assigned to a specific judge.

2

exceeding twenty-five years. Prior to Perrigan's plea by appointment hearing, Perrigan executed a written plea agreement ("WPA") and a truth-in-sentencing guilty plea ("TIS") form. Both the WPA and TIS form set forth the basic terms of the plea agreement and included questions regarding the completeness of those terms. Perrigan acknowledged that the WPA and TIS contained all the terms of the plea agreement, and that he was not promised anything beyond what was contained in the forms.

(5) On April 27, 2022, the Plea Judge held a hearing to consider the WPA. The State summarized the WPA's terms, and defense counsel confirmed the accuracy of the State's recitation. The Plea Judge then conducted a colloquy with Perrigan and confirmed that: (i) Perrigan understood, reviewed with his attorneys, and signed the WPA and TIS form; (ii) although the State made a sentencing recommendation, it was ultimately the Plea Judge's decision what sentence to impose; and (iii) no one promised Perrigan anything else related to his case.

(6) During the plea hearing, the Plea Judge used first-person language and personal pronouns when he explained that the court had discretion to deviate from the State's sentencing recommendation.[2] The Plea Judge then read the two charges

---

[2] THE COURT: Do you understand even though there's been discussions between your lawyers and the State, that the ultimate decision-maker in terms of a sentence will be me?
THE DEFENDANT: Yes.
THE COURT: Do you understand that?
THE DEFENDANT: Mm-hmm.

and Perrigan entered a plea of guilty to both charges. The Plea Judge accepted Perrigan's plea, found it to be knowing, intelligent, and voluntary, and deferred sentencing pending a presentence investigation.

(7) At some point following the plea hearing, the Superior Court transferred Perrigan's case to Superior Court Judge Danielle J. Brennan (the "Sentencing Judge"). In response to the re-assignment, defense counsel emailed the court asking for confirmation that the transfer was not in error. The court confirmed that the case was transferred to the Sentencing Judge, and that the Plea Judge approved the transfer. Defense counsel did not object to the transfer.

(8) About one week prior to the sentencing hearing, the State and Perrigan submitted sentencing memoranda, and requested between twenty and twenty-five years of Level V incarceration—consistent with the WPA terms. Perrigan did not object to the Sentencing Judge's assignment or argue that the WPA required the Plea Judge to sentence Perrigan.

(9) At the sentencing hearing, neither defense counsel nor Perrigan objected to the Sentencing Judge presiding over the hearing or imposing sentence. The Sentencing Judge sentenced Perrigan to fifty years at Level V incarceration, suspended after thirty years for decreasing levels of probation, a no-contact order,

---

THE COURT: And do you understand that if I chose to do it, I could sentence you to life imprisonment for the rest of your life?
THE DEFENDANT: Yes.
App. to Opening Br. at A34-35.

4

and mental health and substance abuse evaluation and treatment. The Sentencing Judge deviated from the State's recommendation because she found certain aggravating factors existed, including: Perrigan's use of a firearm despite being a person prohibited; his custody status at the time of the crime (probation); his lack of amenability to lesser sanctions based on his criminal history and previous probation violations, some of which involved the use of a firearm; and that the nature of the crime warranted a significant term of incarceration.

(10)  Perrigan argues on appeal that it was error for the Superior Court to transfer his case to a new judge for sentencing. As he contends, having the Plea Judge sentence him was an express term of the plea agreement, as evidenced by the Plea Judge's: (i) special assignment to the case "for all purposes until final disposition"; (ii) involvement in pretrial motions, scheduling, and conferences before the guilty plea; and (iii) use of personal pronouns during the plea colloquy. Perrigan relies primarily on the Plea Judge's use of personal pronouns to show that the Plea Judge promised to sentence Perrigan, and Perrigan relied upon that promise when deciding to plead guilty. The State responds that the WPA did not require the same judge to impose the sentence, and Delaware and federal law do not require that a defendant be sentenced by the same judge that accepted the guilty plea.

(11)   Typically, "[t]his Court reviews the Superior Court's refusal to enforce a plea bargain for abuse of discretion."[3]   But Perrigan did not object to the assignment of a new judge for sentencing.  As such, both parties agree that Perrigan's claims are reviewed for plain error.[4]  Plain error is "limited to material defects which are apparent on the fact of the record" and which are "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5]

(12)   The WPA set forth the plea agreement's terms.  It did not provide that the same judge accepting the plea would impose sentence.  Perrigan is bound by the WPA's terms, the TIS form, and his answers to the colloquy that he was not promised anything else in his case, beyond the express terms of the WPA.[6]

(13)   Even though he agreed that he received no promises other than those in the WPA, Perrigan argues that the Plea Judge's use of personal pronouns during the colloquy shows that there was a promise that the Plea Judge would impose the sentence.  He relies on *People v. Arbuckle*, a California decision, where the Court held that the plea judge's use of personal pronouns led to an implied promise that

---

[3] *Norwood v. State*, 2003 WL 29969, at *3 (Del. Jan. 2, 2003).
[4] Opening Br. at 7; Answering Br. at 4; *Bradley v. State*, 2018 WL 5304859, at *2 (Del. Oct. 24, 2018) (explaining that claims not raised in the court below are reviewed under the "plain error" standard).
[5] *Bradley*, 2018 WL 5304859, at *2.
[6] *See* App. to Opening Br. at A26-27, A30-31, A35.  *See also Somerville v. State*, 703 A.2d 629, 632 (Del. 1977) (explaining that a defendant's answers to a truth-in-sentencing form and colloquy are presumed to be truthful and bind the defendant absent "clear and convincing evidence to the contrary.").

6

the same judge would impose the sentence.[7] But the *Arbuckle* case is distinguishable in one important respect—the defendant objected to the appointment of a new judge for sentencing. Perrigan did not object to the re-assignment or sentencing by the Sentencing Judge. He was content with the Sentencing Judge until she imposed a sentence that exceeded the State's recommendation. As explained by the California court in *People v. Guerra*:

> [E]ven if a defendant could demand the same judge, he must do so; he does not have the option of taking his chances before the different judge and, if the result is unfavorable, then demand the original judge. Appellant did not move for reassignment to [the plea judge] or object to [the new sentencing judge]. He may, for all the record shows to the contrary, have calculated that his chances would be better with [the sentencing judge]. He made his election and is bound by it.[8]

(14) Further, there was no legal requirement for the Plea Judge to sentence Perrigan. As a matter of state law, due process does not require that a defendant's "sentence be imposed by the same judge who accepted a defendant's guilty plea."[9] The same is true under federal law.[10] Perrigan agreed that the WPA contained all the promises made by the State, and no other promises were made outside the plea

---

[7] 587 P.2d 220, 224-25 (Cal. 1978).

[8] 200 Cal. App. 3d 1067 (Cal. Ct. App. 4th Dist. 1988) (emphasis in original). *See also Dieudonne v. State*, 245 P.3d 1202, 1207 (Nev. 2011) ("Dieudonne's failure to object [to the assignment of a new sentencing judge] further supports the conclusion that the plea was, in fact, not entered into in reliance on the sentencing judge being the same judge who accepted the plea.").

[9] *Salaberrios v. State*, 2012 WL 4047595, at *2 (Del. Sept. 13, 2012) (citing Del. Super. Ct. Crim. R. 32(a); *Mayfield v. State*, 2003 WL 1711946 (Del. Mar. 28, 2003)).

[10] *Taylor v. Bowersox*, 329 F.3d 963, 969 (8th Cir. 2003) (finding no due process requirement for a defendant to be sentenced by the same judge that accepted the guilty plea); *United States v. Russell*, 776 F.2d 955, 959 (11th Cir. 1985) (finding "no legal requirement that sentence must be imposed by the same judge who accepted the defendant's guilty plea.").

agreement.  The WPA accepted by the court did not contain a promise that the Plea

Judge would impose the sentence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

8