BERNARDO PRADO VEGA, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 53752

August 12, 2010 236 P.3d 632

*Susan D. Burke*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Elissa Luzaich*, Deputy District Attorney, Clark County, for Respondent.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this opinion, we address three issues on appeal.

First, we consider whether appellant Bernardo Vega's constitutional right to confrontation under the Confrontation Clause, *Crawford v. Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), was violated. We conclude that Vega's constitutional right to confrontation was violated when the district court erroneously admitted the testimonial statements from an unavailable expert witness without the witness previously being subjected to cross-examination. However, we conclude that the error did not affect Vega's substantial rights and did not amount to plain error because the testifying expert offered her own opinions independent of those of the unavailable expert witness.

Second, we consider whether the district court properly admitted evidence that the child victim made two suicide attempts during the time period when she was subjected to sexual abuse. Vega asserts that this evidence was irrelevant and intended to appeal to the emotions of the jury. We disagree. The State introduced evidence regarding the victim's suicide attempts to demonstrate that Vega had subjected the victim to ongoing and repetitive sexual abuse, and to show the effect and harm the abuse had on the vic-

tim. Therefore, we conclude that it was not manifest error for the district court to admit this evidence.

Third, Vega challenges the sufficiency of the evidence to convict him on counts 4, 5, and 9 of sexual assault with a minor under the age of 14 because the record does not show that the child victim was under the age of 14 at the time of the sexual assaults. We conclude that based on the evidence presented at trial, a rational jury could have reasonably determined that the victim was under the age of 14 at the time the sexual assaults charged in counts 4 and 5 occurred, but not when the sexual assault charged in count 9 occurred. Thus, we conclude that there was sufficient evidence to support Vega's convictions on counts 4 and 5, but that there was insufficient evidence to support his conviction on count 9.

## FACTS

The child victim was born September 30, 1990, and lived in Las Vegas with her mother, her stepfather Vega, and her brother. Vega moved into the family home when the victim was approximately four years old, and he began sexually abusing the victim when she was eight years old. Despite the victim's two suicide attempts, Vega continued to sexually abuse the victim until December 2006, when she reported the abuse to her mother and then eventually to the police.

### Sexual abuse

Vega committed various forms of sexual abuse of the child victim beginning when she was eight years old. In addition to the other incidents of sexual abuse, the evidence showed that the victim would habitually suck her thumb while sleeping and Vega would remove the victim's thumb and insert his penis into her mouth. The first instance of this form of abuse occurred when the victim was 12 years old; however, she awoke when Vega removed her thumb and saw Vega's penis out of his pants and in front of her face. The victim testified that over the course of the next two years there were other occasions when she would wake up with Vega's penis in her mouth. She would hit Vega and then go to the bathroom and brush her teeth. These assaults eventually subsided when the victim was 14 years old and she stopped sucking her thumb.

Vega's sexual assault of the victim escalated when she entered middle school. The victim testified that around this time Vega placed his fingers into her vagina. This occurred on several occasions while she slept on the couch during the summer months when she was either in the seventh or eighth grade.[1] On cross-

---

[1]We note that throughout the victim's testimony, she was unable to recall her specific age at the time of the abuse and often referred to her school grade level as an indication of her age.

examination, the victim testified that the digital penetration may have occurred in the summer between her eighth and ninth grade years, but she could not specify her exact age, either 13 or 14 years old.

The victim also testified that, on a single occasion, Vega penetrated her vagina with his penis. She recalled a specific incident where she was sleeping on the couch and awoke to find that her shorts were at her ankles and Vega was on top of her with his pants down and that it felt like his penis was in her vagina. She then kicked and screamed at Vega to get him off of her, and he told her to be quiet because the neighbors would hear the commotion. Although the victim was unable to identify her specific age at the time of the assault—she again was not sure whether she was 13 or 14 years old at the time—she specifically recalled that she only slept on the couch in the daytime during the summer months and, for this reason, she believed that this incident occurred around the eighth grade during the summer.

### Suicide attempts

The victim testified that she attempted suicide on two separate occasions in an effort to stop the abuse and to get away from Vega. The first suicide attempt occurred in March 2005 while the victim was 14 years old and in the ninth grade. The victim obtained sleeping pills from a drawer in Vega's bedroom and confronted Vega, telling him that she was going to commit suicide because she "didn't want to be around him anymore." After taking the pills, the victim testified that she only remembered waking up in the hospital, but she did not tell anyone of the sexual abuse. The victim testified that a few weeks after the first suicide attempt, Vega once again began the sexual abuse by touching her breasts and genitals.

The second suicide attempt occurred in November 2006 when the victim again ingested sleeping pills. After being released from the hospital, the victim wrote a letter to her mother explaining that Vega had been molesting and abusing her since she was eight years old. During an argument with her mother, the victim told her about the letter and asked that she read it. After reading the letter, her mother took the victim to stay at her aunt's house for a few weeks while the victim's mother returned home to confront Vega about the accusations. Vega admitted to the victim's mother that he sexually abused the victim.

### Police investigation

The victim met with Las Vegas Metropolitan Police Department (LVMPD) Detective John Baltas and his partner in December

2006 and provided them with details of the sexual abuse. Acting on that evidence, Detective Baltas and his partner went to Vega's residence, and Vega agreed to accompany them to the police department and to participate in an interview. Detective Baltas testified that during the interview Vega admitted to committing various forms of sexual abuse upon the victim. However, Vega continually denied that he penetrated the victim's vagina with his penis. At the conclusion of the interview, Vega wrote a letter to the victim apologizing for his actions.

*Sexual abuse examination*

The victim underwent a sexual abuse examination by nurse Phyllis Suiter at the Clark County Child Advocacy Center. During the examination, Suiter obtained the victim's medical history and history of sexual abuse by asking the victim a series of questions, and requested that the victim describe the different acts of sexual abuse, as well as any resulting emotional or physical effects from the abuse. Suiter also performed a physical examination of the victim's vaginal area, which was recorded by video and depicted by diagram. In conjunction with the sexual abuse examination, Suiter prepared a written report that included her questions, the victim's responses, the victim's medical history and history of sexual abuse, and Suiter's findings indicating that there was a "healed transection" on the victim's hymen.

Because Suiter was unavailable to testify at trial, the State asked Dr. Neha Mehta to review Suiter's examination report and the diagram and video of the examination. At trial, Dr. Mehta testified regarding her own training and experience, and relayed to the jury Suiter's training and qualifications. She further summarized Suiter's questions to the victim and the victim's responses to those questions depicting the victim's medical history and history of sexual abuse, described in general how an examination is performed, and recounted Suiter's findings from the examination. Dr. Mehta went on to explain and interpret Suiter's diagram and markings and generally described what scarring or evidence will be present on the hymen if a penis or other object is inserted into the vagina. Dr. Mehta testified that, while independently reviewing the video recording of Suiter's examination of the victim, she found an area of concern, and that based on her review of the video, her findings were consistent with Suiter's written findings—there was a "healed transection" on the victim's hymen.

*Post-sexual abuse*

After reporting the abuse, the victim struggled in school and eventually withdrew from the eleventh grade in February 2007

when she was 16 years old. The victim testified that prior to withdrawing from the eleventh grade she had attended school without repeating or being held back in any grade.

Following a jury trial, Vega was convicted on counts 1 and 3—lewdness with a child under the age of 14; count 2—attempted sexual assault with a minor under the age of 14; counts 4, 5, and 9—sexual assault with a minor under the age of 14; count 6—sexual assault with a minor under the age of 16; and counts 7 and 8—open or gross lewdness. Vega now appeals the judgment of conviction.

## DISCUSSION

### Confrontation Clause violation

Vega argues that it was a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution to permit Dr. Mehta to testify regarding Suiter's observations, findings, and statements contained in Suiter's sexual abuse examination report. Because Vega failed to object to Dr. Mehta's testimony at trial, our review is limited to plain error only. *Nelson v. State*, 123 Nev. 534, 543, 170 P.3d 517, 524 (2007). To amount to plain error, the " 'error must be so unmistakable that it is apparent from a casual inspection of the record.' " *Id.* (quoting *Garner v. State*, 116 Nev. 770, 783, 6 P.3d 1013, 1022 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002)). Vega "must demonstrate that the error was prejudicial in order to prove that it affected his substantial rights." *Id.*

Under *Crawford v. Washington*, 541 U.S. 36 (2004), the testimonial statement of an otherwise unavailable witness is inadmissible "unless the defendant had an opportunity to previously cross-examine the witness regarding the witness's statement." *Medina v. State*, 122 Nev. 346, 353, 143 P.3d 471, 476 (2006). Recently, in *Melendez-Diaz v. Massachusetts*, the United States Supreme Court concluded that the admission of a forensic analysts' affidavits that reported that a seized substance was cocaine, without the analysts themselves being subject to cross-examination, violated the defendant's right to confrontation. 557 U.S. 305, 318-19 (2009). The Court observed that the analysts' affidavits were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Id.* at 310-11 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)). In response to the government's claim that the analysts' affidavits should not be subject to the Confrontation Clause because they represent "neutral and

scientific testing," *id.* at 318, the Court concluded that confrontation of the analysts would be beneficial to "test[ ] [the] analysts' honesty, proficiency, and methodology—the features that are commonly the focus in the cross-examination of experts." *Id.* at 321 (internal quotations omitted). Requiring the cross-examination of an analyst or examiner is "one means of assuring accurate [results]," *id.* at 318, and "[l]ike expert witnesses generally, an analyst's [or examiner's] lack of proper training or deficiency in judgment may be disclosed." *Id.* at 320.

The threshold question in evaluating a confrontation right under *Crawford* and *Melendez-Diaz* is whether the statement was testimonial in nature. *See Chavez v. State*, 125 Nev. 328, 342, 213 P.3d 476, 484 (2009). Although *Crawford* does not specifically define what constitutes a testimonial statement, we have previously concluded that "a statement is testimonial if it ' "would lead an objective witness" ' to reasonably believe ' "that the statement would be available for use at a later trial." ' " *Medina*, 122 Nev. at 354, 143 P.3d at 476 (quoting *Flores v. State*, 121 Nev. 706, 719, 120 P.3d 1170, 1178-79 (2005) (quoting *Crawford*, 541 U.S. at 52)). In a child sexual assault context, an examination conducted pursuant to an investigation by law enforcement generally renders the examination report testimonial. *Cf. Ramirez v. State*, 114 Nev. 550, 561, 958 P.2d 724, 731 (1998).

Here, after meeting with LVMPD detectives, the victim underwent a sexual abuse examination conducted by Suiter at the Clark County Child Advocacy Center. Suiter prepared a written report, which included her questions to the victim and the victim's answers concerning the victim's medical history and history of sexual abuse, the nature of the sexual abuse, the frequency of the abuse, and the emotional and physical results of the abuse, and Suiter's observations and findings. In addition to the written report, the sexual abuse examination included a gynecological examination of the victim, which was recorded on video and depicted by diagram.

Because Suiter was unavailable to testify at trial, the State asked Dr. Mehta to review Suiter's written report and the diagram and video of the examination. Without objection, the district court permitted Dr. Mehta to testify as to the contents of Suiter's written report, including Suiter's questions and the victim's responses concerning the victim's medical history and history of sexual abuse and Suiter's observations and findings upon conducting the gynecological examination.

Dr. Mehta testified that a primary purpose of conducting a sexual assault examination in conjunction with a police investigation is to provide evidence as to whether a sexual assault has occurred. Accordingly, we conclude that a medical professional conducting such an examination would reasonably believe that his or her report and findings regarding the examination would be available for use at a later trial. Therefore, because Suiter could have reasonably believed that her report would be available for use at a later trial, we determine that her written report was testimonial in nature and inadmissible unless Suiter was subject to cross-examination under *Crawford* and *Melendez-Diaz*.

Dr. Mehta's testimony regarding the content of Suiter's written report effectively admitted the report into evidence, which functioned as the equivalent of Suiter's testimony, without subjecting Suiter to cross-examination. To the extent that Dr. Mehta's testimony admitted Suiter's written report, including Suiter's questions, the victim's responses detailing the victim's medical history and history of sexual abuse, and Suiter's observations and findings without Suiter being subject to cross-examination, we conclude that this violated the Confrontation Clause, *Crawford*, and *Melendez-Diaz*. In contrast, however, after reviewing the video recording and the diagram of the gynecological examination, Dr. Mehta offered her independent opinion as an expert witness that there was a "healed transection" on the victim's hymen. We conclude that Dr. Mehta's independent opinion based on the diagram and video recording does not violate the Confrontation Clause, *Crawford*, or *Melendez-Diaz* because Dr. Mehta's judgment, proficiency, and methodology were subject to cross-examination.

Therefore, following the reasoning in *Crawford* and *Melendez-Diaz*, we conclude that the district court erroneously permitted Dr. Mehta to testify regarding the contents of Suiter's sexual abuse examination report because the report was testimonial and Vega was not afforded the opportunity to cross-examine Suiter. We now turn our attention to whether this error was prejudicial and, therefore, affected Vega's substantial rights.

### Confrontation Clause violation did not amount to plain error

When an error has been properly preserved for review, we traditionally review the prejudicial effects of a *Crawford* violation under a harmless-error analysis. However, because Vega did not object at trial, thereby failing to preserve the error for review, the *Crawford* violation is reviewed for plain error, requiring Vega to demonstrate that the error was prejudicial and, therefore, affected his substantial rights. *Nelson*, 123 Nev. at 543, 170 P.3d at 524.

In this case, the State argues that any improper testimony by Dr. Mehta was either repetitive or inconsequential and, therefore, was not prejudicial and did not affect Vega's substantial rights. We agree. In the portion of Dr. Mehta's testimony that we concluded violates *Crawford* and *Melendez-Diaz*, Dr. Mehta recounted Suiter's questions, the victim's answers depicting the victim's medical history and history of sexual abuse, and Suiter's observations and findings. However, this testimony was duplicative of the victim's detailed testimony describing the sexual abuse and consistent with Dr. Mehta's independent opinion that the victim's hymen had a "healed transection." Furthermore, Dr. Mehta's testimony does not implicate Vega as having caused the "healed transection," and she acknowledged that objects other than a penis could have caused the injury. As such, we conclude that Dr. Mehta's erroneously admitted testimony was inconsequential, and Vega has failed to demonstrate that the *Crawford* and *Melendez-Diaz* violation was prejudicial. Therefore, we conclude that the violation did not affect Vega's substantial rights.

*Relevant evidence*

Next, Vega asserts that the district court erred when it allowed the State to introduce evidence of the victim's two suicide attempts, arguing that this evidence was irrelevant and intended to emotionally appeal to the sympathies of the jury. A trial court has broad discretion to determine the admissibility of evidence, *Thompson v. State*, 125 Nev. 807, 815, 221 P.3d 708, 714 (2009), and its "determination to admit or exclude evidence is given great deference and will not be reversed absent manifest error." *Baltazar-Monterrosa v. State*, 122 Nev. 606, 613-14, 137 P.3d 1137, 1142 (2006). Relevant evidence is admissible pursuant to NRS 48.025 and is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015.

Here, the State argues that evidence of the suicide attempts was relevant in order to provide a complete picture of the extent of the abuse, show how the abuse was ultimately revealed, and supply support for its theory that the victim was not a willing participant in the sexual abuse. When questioned about her motives for attempting suicide, the victim testified that she was trying to stop the abuse and avoid "be[ing] around [Vega] anymore." The victim further testified that after she attempted suicide a second time, she and her mother had an argument and she ultimately revealed to her

mother that Vega had been sexually abusing her since she was eight years old.

We conclude that the evidence of the victim's suicide attempts was relevant as it had a tendency to establish that it is more probable than not that Vega had sexually assaulted the victim and that the abuse had occurred for several years. Thus, we conclude that it was not manifest error for the district court to admit this evidence.[2]

## Sufficiency of the evidence

Notwithstanding Vega's convictions on multiple counts of sexual misconduct with a minor, Vega's appeal concerning the sufficiency of the evidence is limited to challenging his convictions on counts 4, 5, and 9 of sexual assault of a minor under the age of 14.

The Due Process Clause of the United States Constitution requires that each element that constitutes a crime be proven beyond a reasonable doubt.[3] *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007). Vega argues that because the victim could not definitively testify as to whether the abuse occurred before or after she was 14 years old, there was insufficient evidence for a rational jury to determine beyond a reasonable doubt that the abuse was committed prior to the victim reaching the age of 14.

''When determining whether a jury verdict was based on sufficient evidence to meet due process requirements, we will inquire ' ''whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'' ' '' *Id.* (quoting *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984))). The jury's verdict will not be disturbed on appeal when there is substantial evidence supporting it. *LaPierre v. State*, 108 Nev. 528, 530, 836 P.2d 56, 57 (1992). We have pre-

---

[2]Vega also argues that the State's reference to the victim's involvement in a homosexual relationship was irrelevant and improper. We agree. However, because the State's reference was isolated, without any further follow-up questions, and overwhelming evidence supports Vega's conviction, we conclude that the reference was harmless beyond a reasonable doubt. *See Domingues v. State*, 112 Nev. 683, 693, 917 P.2d 1364, 1372 (1996) (holding that the admission of irrelevant evidence was harmless in light of the overwhelming evidence supporting the conviction).

[3]Both Vega and the State argue that age is an element of the crime charged under NRS 200.366. As such, we do not address whether the age of the victim is an element of the crime or a sentencing factor. *See Harris v. United States*, 536 U.S. 545 (2002).

viously held that in sexual assault cases a "victim's testimony alone is sufficient to uphold a conviction." *Rose*, 123 Nev. at 203, 163 P.3d at 414. This court has further recognized that "child victims are often unable to articulate specific times of events and are oftentimes reluctant to report the abuse to anyone until quite some time after the incident." *LaPierre*, 108 Nev. at 531, 836 P.2d at 58.

Here, since the parties argue that age is an essential element of the crimes charged in counts 4, 5, and 9, we must balance the due process requirement of proving each element beyond a reasonable doubt with this court's recognition in *LaPierre*—that a child victim is often unable to specifically articulate the timing of events—in order to determine whether sufficient evidence supports Vega's conviction on each count he challenges on appeal such that a rational jury could have found that the victim's age had been established beyond a reasonable doubt.

### Count 4—sexual assault with a minor under the age of 14 (digital penetration)

On direct examination, the victim testified that Vega digitally penetrated her vagina while she slept on the couch in the living room during the summer months when she was in the seventh or eighth grade, but she could not specifically remember her age. However, on cross-examination, the victim testified that the abuse occurred during either the eighth or "going to ninth" grade and again stated that she did not know whether she was 13 or 14 years old. Although the victim could not specifically recall her age at the time the abuse occurred, the evidence presented contained certain age identifiers that a rational jury could have utilized to make logical inferences with respect to the victim's age at the time. *See Adler v. State*, 95 Nev. 339, 344, 594 P.2d 725, 729 (1979) (stating that it is the jury's "prerogative to make logical inferences which flow from the evidence").

Our review of the record shows that the victim was born on September 30, 1990. The victim often equated her age with her school grade level, and she progressed through school without repeating or being held back in any grade level. However, the victim testified that she withdrew from the eleventh grade (the 2006/2007 school year) in February 2007 at the age of 16. The victim further testified that she first attempted suicide during the ninth grade (the 2004/2005 school year) in March 2005, when she was 14 years old. Her second suicide attempt was in November 2006, when she was 16 years old. And finally, during its closing argument, the State illustrated for the jury the victim's age and correlating grade and school year from the time she started kindergarten until she withdrew from school in the eleventh grade.

Based on the evidence presented, we determine that by using these age identifiers, a rational jury could logically infer that the victim turned 14 years old on September 30, 2004, and, thus, the victim would have already begun her 2004/2005 ninth grade school year. Therefore, we conclude that the jury could have determined beyond a reasonable doubt that the victim was under the age of 14 when Vega sexually assaulted her as pleaded in count 4.

Accordingly, we conclude that there was sufficient evidence to support Vega's conviction on count 4.

### Count 5—sexual assault with a minor under the age of 14 (penile penetration)

The age-identifying evidence presented to support Vega's conviction on count 5 is similar to that evidence supporting his conviction on count 4. The victim testified that Vega sexually assaulted her by penetrating her vagina with his penis while she was sleeping on the couch during the summer when she was in the eighth grade. Again, during cross-examination, Vega challenged the victim's recollection of her age at the time of the abuse. The victim testified that while she could not recall whether she was 13 or 14 years old, she specifically recalled that she only slept on the couch in the daytime during the summer months, and, for this reason, she believed that this incident occurred around the time that she was in the eighth grade during the summer.

Based on the evidence presented, we determine that by using the age identifiers described above, a rational jury could logically infer that the victim was under the age of 14 when the abuse alleged in count 5 occurred. Therefore, we conclude that there was sufficient evidence to support Vega's conviction on count 5.

### Count 9—sexual assault with a minor under the age of 14 (fellatio)

Unlike the evidence presented to support Vega's convictions on counts 4 and 5, our review of the record indicates that the evidence lacks specificity sufficient enough to support Vega's conviction on count 9. In particular, the victim testified that she habitually sucked her thumb while sleeping until she was 14 years old, and that there were occasions when Vega would remove her thumb and insert his penis into her mouth. The victim testified that Vega first attempted to do this when she was 12 years old, but that he was unsuccessful because she woke up when her thumb was removed.[4]

---

[4]For this incident, Vega was convicted of count 2—attempted sexual assault with a minor under the age of 14. Vega does not challenge the sufficiency of the evidence for this conviction on appeal.

The victim testified that there were other occasions where she woke up with Vega's penis in her mouth. On cross-examination, the victim testified that she could not say with certainty but she was probably 14 years old and in the ninth grade when this abuse occurred. However, the victim's testimony does not clarify, and there is no other evidence in the record that shows, whether these other occasions of abuse occurred when the victim was under the age of 14.

The victim's testimony was the only evidence presented upon which the jury could have relied to determine whether the victim was under the age of 14 when this sexual abuse occurred. Based on the uncertainty of this testimony, we determine that no rational jury could have found beyond a reasonable doubt that the victim was under the age of 14 when the alleged sexual abuse associated with count 9 occurred. Accordingly, we conclude that there was insufficient evidence to support Vega's conviction on count 9, and we reverse Vega's conviction on this count.[5]

Accordingly, we affirm the judgment of conviction on all counts except for count 9, which we reverse, and we remand this matter to the district court for entry of an amended judgment of conviction consistent with this opinion.

DOUGLAS and PICKERING, JJ., concur.

---

[5]Vega also argues that the jury instructions were confusing and failed to properly instruct the jury on the State's burden to prove each element of the crime. We conclude that this argument is without merit because Vega failed to object or request a jury instruction at trial, and instruction no. 14, in pertinent part, clearly informs the jury that "[t]his presumption [of innocence] places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged." *See Flanagan v. State*, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996).