**131 Nev., Advance Opinion 26**
IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MALCOLM MANNING, A/K/A MALCOLM DENZEL MANNING, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 63274 |



FILED

MAY 0 7 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of burglary, battery with intent to commit a crime (victim 60 years of age or older), and robbery (victim 60 years of age or older). Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and Deborah L. Westbrook, Deputy Public Defender, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Elana L. Graham, Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

## OPINION

By the Court, CHERRY, J.:

In addition to other errors that are not issues of first impression, this opinion addresses whether it is constitutional error for a

district court to fail to notify and confer with the parties when the court receives and responds to a note from the jury that it is deadlocked. We hold that it is. We also hold that such error will be reviewed for harmlessness beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

This case involves the robbery of an ABC Beer and Wine Store in Las Vegas. A man entered the store where Luz Potente, a 64-year-old Filipino cashier, who spoke primarily Tagalog, was working. Potente recognized the man because she had seen him in the store two to three times before. During one of his prior visits, he spoke to Potente about selling either DVDs or CDs. When the man robbed the store, Potente stated that he looked around the store and then proceeded around the counter to where she stood behind the cash register. According to Potente, the man roughly pushed her aside and went to a set of plastic drawers where the store kept gaming money and receipts in envelopes, he took an envelope, and he then left the store. The robbery took approximately one minute to complete. Potente initially thought that the man took an envelope containing $500, but she later realized the cash was still there.

Three days after the incident, a responding officer returned to the convenience store with a six-person photo lineup. The officer showed Potente the lineup and asked her if she saw anyone in it that she recognized. Potente promptly identified Manning as the individual who came into the store that day and took the envelope. Manning was arrested after police discussed the case with Akeem Schafer, who was acquainted with Manning. The State subsequently charged Manning with burglary, battery with intent to commit a crime with a victim 60 years of age or older, and robbery with a victim 60 years of age or older.

The case proceeded to trial. The jury retired for deliberations late in the day and, about an hour later, gave the court a note indicating that it was deadlocked 10-2 in favor of conviction. The court instructed the marshal to tell the jury to come back the next day and continue deliberating. The court failed to inform the parties of the note until the next day after the jury returned its verdict finding Manning guilty of all charges.

After receiving the verdict and learning of the jury's note that it was deadlocked, Manning filed a motion for a new trial. He argued *inter alia* that a new trial was warranted because he did not receive notice that the jury considered itself deadlocked, thus depriving him of his right to request a mistrial. The court denied the motion because the jury's note did not contain a question about law or evidence.

The district court entered a judgment of conviction, sentencing Manning to 6 to 15 years in the Nevada Department of Corrections. Manning appealed.

## DISCUSSION

Manning argues that the district court's failure to notify and seek input from the parties after receiving the jury's note that it was deadlocked constitutes a constitutional error. Whether the district court's actions in this case violated Manning's rights to counsel, to be present at trial, to a fair trial, and to due process are constitutional issues that we review de novo. *See Jackson v. State*, 128 Nev., Adv. Op. 55, 291 P.3d 1274, 1277 (2012).

We have yet to address in a published opinion the constitutional implications of a district court's failure to advise counsel

about the existence of a jury note.[1] Numerous federal courts have pondered this question. While these decisions do not bind us, they are illuminating. *Blanton v. N. Las Vegas Mun. Court*, 103 Nev. 623, 633, 748 P.2d 494, 500 (1987).

The Ninth Circuit has determined that a district court's failure to notify defense counsel about a jury's inquiry during deliberations violates the defendant's constitutional right to counsel during a critical stage of trial. *See Musladin v. Lamarque*, 555 F.3d 830, 840-43 (9th Cir. 2009) (finding defendant had a constitutional right to participate in district court's communication with the jury during deliberation); *United States v. Barragan-Devis*, 133 F.3d 1287, 1289 (9th Cir. 1998) (finding a constitutional right to participate in court's decision of whether to respond to jury question during deliberation and the response itself); *United States v. Frazin*, 780 F.2d 1461, 1468-69 (9th Cir. 1986) (finding a due process violation where the district court (1) instructed the jury to continue deliberating despite deadlock vote and (2) the court failed to advise defendants or counsel).

In *Frazin*, the jury sent a note to the judge indicating that it was hopelessly deadlocked. 780 F.2d at 1464. The district court, without consulting counsel, ordered the marshal to instruct the jury that it was to continue deliberations. *Id.* The Ninth Circuit explained that "[t]he failure of the court to notify appellants or their counsel of the jury's deadlock vote, and the court's ex parte message to the jury to continue its deliberations,

---

[1]We discussed the issue in *Grimes v. State*, Docket No. 62835 (Order of Affirmance, Feb. 27, 2014), an unpublished disposition. *See* SCR 123 (unpublished dispositions shall not be cited as legal authority).

violated appellants' [due process] constitutional rights" to be present at every stage of trial. *Id.* at 1468-69.

The Ninth Circuit again explained the significance of communications with a deliberating jury in *Musladin*: "[t]he delicate nature of communication with a deliberating jury means that defense counsel has an important role to play in helping to shape that communication." 555 F.3d at 840. Accordingly, the presence of both the defendant and his or her counsel is required when discussing questions from the jury "because counsel might object to the instruction or may suggest an alternative manner of stating the message—a critical opportunity given the great weight that jurors give a judge's words. The defendant's or attorney's presence may also be an important opportunity to try and persuade the judge to respond." *Id.* at 841. The importance of this opportunity is heightened when a court responds to a jury's note indicating a deadlock:

> A defendant's participation in formulating a response to a deadlocked jury, whether through his counsel or by his personal presence as well, may be important to ensuring the fairness of the verdict. . . . [M]inority members of a deadlocked jury are especially susceptible to pressure from the majority to change their views. A defendant should be afforded the opportunity to request that the jury be reinstructed on the burden of proof or on its members' duty to decide according to their own consciences.

*Id.* (quoting *Frazin*, 780 F.2d at 1469). The Third Circuit agrees that this is a constitutional violation. *See United States v. Toliver*, 330 F.3d 607, 616-17 (3d Cir. 2003) (holding that a criminal defendant's Fifth Amendment right to be present at every critical stage of trial and Sixth Amendment right to counsel are violated when a judge fails to inform

counsel of a note from the jury and fails to allow counsel to argue prior to responding to the jury). The *Musladin* court further explained that

> [t]he "stage" at which the deprivation of counsel may be critical should be understood as the *formulation* of the response to a jury's request for additional instructions, rather than its delivery. Counsel is most acutely needed before a decision about how to respond to the jury is made, because it is the substance of the response—or the decision whether to respond substantively or not—that is crucial.

555 F.3d at 842.

Like the Ninth Circuit and the Third Circuit, we believe that due process gives a defendant the right to be present when a judge communicates to the jury (whether directly or via his or her marshal or other staff). A defendant also has the right to have his or her attorney present to provide input in crafting the court's response to a jury's inquiry. Accordingly, we hold that the court violates a defendant's due process rights when it fails to notify and confer with the parties after receiving a note from the jury. Therefore, we conclude that the district court erred in this regard in Manning's case.

Manning argues that in such a case, the Ninth Circuit requires automatic reversal; he is incorrect. The proposed rule of automatic reversal that a panel of the Ninth Circuit put forth in *Musladin* is dicta. *Musladin*, 555 F.3d at 842-43. Further, the Ninth Circuit has since departed from this notion. *See United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009) (stating, in reference to *Musladin*, that "[w]e never suggested that all errors regarding jury communications during deliberations were subject to automatic reversal," and holding that a court's error in responding to a jury's note without consulting the parties

or counsel constitutes error that is reviewed for harmlessness beyond a reasonable doubt). Accordingly, we hold that when a district court responds to a note from the jury without notifying the parties or counsel or seeking input on the response, the error will be reviewed to determine if it was harmless beyond a reasonable doubt.[2]

The Ninth Circuit provides three factors to determine the harmlessness of the error in this context: (1) "the probable effect of the message actually sent"; (2) "the likelihood that the court would have sent a different message had it consulted with appellants beforehand"; and (3) "whether any changes in the message that appellants might have obtained would have affected the verdict in any way." *United States v. Barragan-Devis*, 133 F.3d 1287, 1289 (9th Cir. 1998); *United States v. Frazin*, 780 F.2d 1461, 1470 (9th Cir. 1986).

We conclude that the district court's error was harmless beyond a reasonable doubt. In this case, at the end of the day, after only a little more than an hour of deliberations, the jury's note informed the district court that it was deadlocked 10-2. In response, the court told the

---

[2]Manning further argues that we cannot determine whether the district court's error was harmless because the district court failed to make a record of the ex parte communication. However, we have previously held that "[t]he burden to make a proper appellate record rests on [the] appellant." *Greene v. State*, 96 Nev. 555, 558, 612 P.3d 686, 688 (1980). Under these circumstances, an adequate record will contain (1) the contents of the note from the jury, (2) any argument from counsel pertaining to the jury's note and the court's response, (3) the court's instructions to its marshal regarding the response, and (4) the marshal's actual response to the jury. In the event that the court fails to sua sponte make a record or if the court fails to inform the parties of the note and its response until after the jury returns its verdict, a party should make as complete a record as possible once it learns of the ex parte communications.

SUPREME COURT
OF
NEVADA

(O) 1947A

marshal to excuse the jury for the day and instruct them to return the next day to continue deliberations. The message that the court instructed the marshal to give to the jury was simple and did not contain any legal instructions. Although the court should have reconvened the proceedings and, on the record, discussed the jury's note and conferred with counsel in developing a response, we do not believe that the result here would have been substantively different had it done so. It is unlikely that after only an hour of deliberations the court would have proffered additional instructions to the jury or required the jurors to continue deliberating past 5 p.m. Moreover, the court correctly directed its marshal to excuse the jury and tell them to return the next day to continue deliberating. It is unlikely that the marshal would have altered this simple instruction in any meaningful or prejudicial manner.

Some courts have also assessed whether the statement to the jury was inherently coercive. *Frazin*, 780 F.2d at 1470-71. The statement to the jury in this case was not inherently coercive because it did not inform the jury in any way that the court would not accept a deadlocked jury. The Court simply informed the jury that it would need to continue deliberations, which the jury did the next morning. Accordingly, this error does not warrant reversal.

We have reviewed Manning's remaining claims and conclude that they lack merit.

First, Manning contends that the State violated his right to equal protection when it used four out of its five peremptory challenges to exclude females from the jury. We conclude that the trial court did not err when it found that the State used its peremptory challenges as permitted by the Constitution, and we decline to address Manning's additional

arguments expanding this issue. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994); *Batson v. Kentucky*, 476 U.S. 79 (1986).

Second, Manning argues that the district court violated his rights under the Confrontation Clause when the court admitted evidence of the State's efforts to locate Schafer, a nontestifying witness who made out-of-court testimonial statements about Manning. We conclude that the testimony from the district attorney's investigator concerning his attempt to locate Schafer did not violate Manning's Confrontation Clause rights because the investigator did not refer to any testimonial statement. *See Vega v. State*, 126 Nev. 332, 339, 236 P.3d 632, 637 (2010) (holding that "[t]he threshold question in evaluating a confrontation right . . . is whether the statement was testimonial in nature").

Third, Manning also argues that his Confrontation Clause rights to have Schafer testify were violated because the district court admitted hearsay statements from prison phone calls indicating that Manning did something wrong. He also argues that the calls were not relevant and contained evidence of his prior bad acts and the prior bad acts of others. We conclude that Manning waived his Confrontation Clause argument and prior bad acts evidence arguments when he waived redaction of the calls. *Cf. United States v. Peeper*, 685 F.2d 328, 329 (9th Cir. 1982) (finding no confrontation clause violation when defense counsel's failure to object resulted from a tactical decision).

Fourth, Manning argues that the district court erred in admitting three phone calls he made from jail because the calls included evidence of possible plea negotiations and were irrelevant and unfairly prejudicial. We conclude that the district court properly admitted the phone calls because they evidenced consciousness of guilt. *See Abram v. State*, 95 Nev. 352, 356, 594 P.2d 1143, 1145 (1979) ("Declarations made

after the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence, or tend to establish intent may be admissible.").

Fifth, Manning argues that prosecutors committed misconduct by reminding the jury in closing arguments that officers arrested Manning after speaking with Schafer and that the district attorney's investigator searched for Schafer to have him testify. We conclude that the prosecution's statements about Schafer during closing arguments did not constitute plain error because the prosecution is entitled to make inferences from the admitted testimony and evidence. *See Jain v. McFarland*, 109 Nev. 465, 476, 851 P.2d 450, 457 (1993).

Sixth, Manning argues that the district court's error of admitting the phone calls that referenced his desire to obtain his discovery was compounded by the district court's refusal to proffer a curative instruction when the prosecution repeatedly insinuated that Manning's assertion of a legal right was evidence of guilt. Because we conclude that the district court did not err in admitting the calls, we need not address this issue.

Seventh, Manning contends that the victim's in-court identification was unreliable because she only briefly viewed the suspect, she was making a cross-racial identification, her anxiety decreased her degree of attention, her prior description was vague, her prior identification was unsure, and her in-court identification occurred several months after the crime. The victim recognized Manning because he had previously been in the store, she saw him during the robbery for approximately one minute at very close range, and she also immediately picked him out of a photo lineup. We conclude that the admission of the

in-court identification was not erroneous. *See Dieudonne v. State*, 127 Nev., Adv. Op. 1, 245 P.3d 1202, 1205 (2011) (holding that "[t]o amount to plain error, an error must be so unmistakable that it is apparent from a casual inspection of the record").

Eighth, Manning argues that the district court violated his Confrontation Clause rights in allowing unnoticed expert testimony from Eric Sahota, the forensic scientist who reviewed the fingerprints that police took from the crime scene. He also argues that the district court violated his rights to due process and a fundamentally fair trial when Sahota was allowed to testify to matters outside his expertise. We conclude that the district court did not abuse its discretion in allowing Sahota to testify at trial because the defense acknowledged at calendar call that it was on notice that the State might call a fingerprint expert to testify. We also conclude that the district court did not abuse its discretion in allowing Sahota to apply this testimony to the surveillance video from the store. *See* NRS 50.275.

Ninth, Manning contends that because an officer testified that police were "informed" that he was a possible suspect instead of stating that police "developed" him as a possible suspect, the jury was improperly left with unchallenged statements that individuals provided inculpatory information about him. We conclude that because the officer could have been informed in various ways that Manning was a possible suspect, this testimony does not fall within the purview of the Confrontation Clause's protections. *See Vega*, 126 Nev. at 339, 236 P.3d at 637.

## *CONCLUSION*

We conclude that the district court's error in responding to the note from the jury without notifying the parties or counsel was harmless

beyond a reasonable doubt. Accordingly, we affirm the judgment of conviction as to all counts.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Douglas