# IN THE SUPREME COURT OF THE STATE OF NEVADA

DEON MARQUIEST KILES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72726

FILED

JAN 3 1 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of burglary while in possession of a firearm and two counts of robbery with use of a deadly weapon (victim 60 years of age or older). Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

A masked individual robbed two grocery stores at gunpoint, with witnesses from both stores testifying that the robber was tall, African-American, and lacked any visible tattoos. Police obtained a fingerprint from one of the stores that matched appellant Deon Marquiest Kiles and subsequently arrested him. Kiles was charged with the four burglary and robbery counts and, after a two-and-a-half day jury trial, he was convicted on all the charges. He now raises six claims on appeal. Having reviewed the record, we conclude that none of the claims warrant relief and therefore affirm the judgment of conviction.

First, Kiles contends that the district court unreasonably restricted voir dire before all the potential jurors were seated, thereby depriving Kiles of the ability to meaningfully use his peremptory challenges. We agree that the district court abused its discretion by

19-04794

requiring Kiles to utilize his peremptory challenges against seated jurors without the district court first questioning unseated jurors to elicit whether they could be fair and impartial; however, we conclude that the restriction on voir dire does not warrant reversal under the circumstances. *Johnson v. State*, 122 Nev. 1344, 1354-55, 148 P.3d 767, 774 (2006) (providing that the method by which voir dire is conducted "rests within the sound discretion of the district court, whose decision will be given considerable deference by this court"); *Whitlock v. Salmon*, 104 Nev. 24, 27, 752 P.2d 210, 212 (1988) ("The purpose of voir dire examination is to determine whether a prospective juror can and will render a fair and impartial verdict on the evidence presented and apply the facts, as he or she finds them, to the law given.").

Pursuant to NRS 16.030(6), "[t]he judge shall conduct the initial examination of prospective jurors and the parties or their attorneys are entitled to conduct supplemental examinations which must not be unreasonably restricted." Each side is also entitled to four peremptory challenges. NRS 16.040(1). Here, while Kiles was given the correct number of peremptory challenges and was permitted to question the jurors, the district court did not examine potential unseated jurors before requiring Kiles to use those peremptory challenges against seated jurors. This process created a situation where Kiles was unaware of the comparative fairness of the replacement jurors before exercising his peremptory challenges. Thus, even though the court permitted Kiles to question potential jurors, the court's voir dire process unreasonably restricted the

purpose and effectiveness of that questioning.[1] *See* NRS 16.030(6). Such an error does not warrant reversal, however, where, as here, the appellant fails to show that an impartial jury was not empaneled or any resulting prejudice. *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (recognizing that, so long as an impartial jury is empaneled, errors regarding peremptory challenges do not warrant a reversal of the underlying conviction); *see also Rivera v. Illinois*, 556 U.S. 148, 160-61 (2009) (holding that, depending on the circumstances, errors regarding state-provided peremptory challenges do not warrant a reversal of the underlying conviction unless they render the criminal trial fundamentally unfair). Indeed, Kiles does not even argue that the impaneled jury was partial or that any prejudice resulted from this error and reversal is therefore not warranted.

Second, Kiles contends that the State exercised a peremptory challenge in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Proving a *Batson* violation involves three steps. *Hawkins v. State*, 127 Nev. 575, 578, 256 P.3d 965, 967 (2011); *see Purkett v. Elem*, 514 U.S. 765, 767 (1995) (summarizing the three-step *Batson* analysis). In this case, we need only address the first step, whether Kiles made a prima facie case of racial discrimination. *Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006) (providing that, under a *Batson* analysis, "the opponent of the peremptory challenge must make out a prima facie case of discrimination" before the production burden shifts to the challenge's proponent to provide a neutral

---

[1]In multiple previous decisions, this court has determined that the district court judge presiding over the trial in this case committed similar errors in the jury selection process. We caution the district court that the continued failure to follow established rules regarding jury selection may result in sanctions and a referral to the Nevada Commission on Judicial Discipline.

explanation for the challenge). We conclude that Kiles's arguments that the juror in question did not do or say anything to set him apart from the other jurors, aside from being African American, fail to make the required prima facie showing. *See Watson v. State*, 130 Nev. 764, 776, 335 P.3d 157, 166 (2014) ("[T]he mere fact that the State used a peremptory challenge to exclude a member of a cognizable group is not, standing alone, sufficient to establish a prima facie case of discrimination under *Batson*'s first step; 'something more' is required."). The district court therefore did not clearly err in denying Kiles's *Batson* challenge and no relief is warranted on this claim. *See id.* at 775, 335 P.3d at 165 (reviewing the district court's decision on a *Batson* challenge for clear error).

Third, Kiles argues that the district court allowed a fingerprinting analyst to testify in violation of the Confrontation Clause because the analyst did not conduct the initial examination of the prints, prepare the prints for database search, input the prints into the database, or review or analyze the list of other candidates from the database. The State argues that the analyst offered his own independent analysis of the prints and, thus, the testimony of the person who took the prints and input them into the database was not required to satisfy the Confrontation Clause. An expert witness testifying about the contents of a report prepared by another person who did not testify "effectively admit[s] the report into evidence," and violates the Confrontation Clause, unless the testifying expert only presents independent opinions based on the report's data. *Vega v. State*, 126 Nev. 332, 340, 236 P.3d 632, 638 (2010); *see State v. Lui*, 315 P.3d 493, 509 (Wash. 2014) (recognizing that Confrontation Clause precedent "guarantees the accused the right 'to be confronted with the analyst who made the certification,' . . . and *not* the analysts whose work

might have contributed to that certification" (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011))). Here, the testifying analyst not only certified another examiner's results, but in doing so conducted his own independent comparison of latent prints lifted with Kiles's known exemplars. Thus, Kiles's Confrontation Clause rights were not violated. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009) (observing that this court reviews potential Confrontation Clause violations de novo).

Fourth, Kiles argues that the district court abused its discretion in limiting his cross-examination of the fingerprint analyst. We conclude that the district court's limitation of Kiles's cross-examination was not an abuse of discretion as the information Kiles sought to illicit was irrelevant. *See Bushnell v. State*, 95 Nev. 570, 572, 599 P.2d 1038, 1039 (1979) (reviewing a district court's evidentiary ruling for an abuse of discretion). Testimony regarding individuals being misidentified based on fingerprint evidence in other, unrelated cases had no relevancy to the fingerprint analysis in the case at hand or to the analyst's qualifications, and irrelevant evidence is not admissible. *See* NRS 48.015 (providing that evidence is only relevant if it "make[s] the existence of any fact that is of consequence . . . more or less probable"); NRS 48.025(2) (deeming irrelevant evidence to be inadmissible). Furthermore, the district court allowed Kiles to reframe his questions to address the fact that fingerprint identification is fallible, which the analyst acknowledged, such that the issue was still presented to the jury via Kiles's cross-examination.

Fifth, Kiles argues that the district court erred by denying his motion for a mistrial based on *Brady v. Maryland*, 373 U.S. 83 (1963), because the State failed to disclose evidence of Kiles's visible tattoos when the witnesses stated that the robber had no visible tattoos. To establish a

(O) 1947A

*Brady* violation, Kiles must show that: "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (citing *Strickler v. Greene*, 527 U.S. 263 (1999)). We review a district court's resolution of a *Brady* claim de novo. *Id.* at 66, 993 P.2d at 36.

We agree with Kiles that the information and evidence related to his tattoos was favorable to him, as witnesses indicated that they did not see any visible tattoos on the perpetrator and, thus, information and photographs of Kiles's visible tattoos that predated the robberies would have aided his defense.[2] The State's failure to turn over this material exculpatory information absolutely violated *Brady*'s principle of ensuring that an accused person is treated fairly in the administration of justice. 373 U.S. at 87. The district court cured the prejudice resulting from the failure to disclose, however, by allowing Kiles the opportunity to reopen his case-in-chief to present the late-disclosed evidence and information regarding his visible tattoos. *See United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (concluding that no due process violation under *Brady* occurred where the court agreed to allow defendants to recall witnesses and reexamine them regarding the new evidence, thus giving them a "substantial opportunity to use the [evidence] and to cure any prejudice caused by the delayed disclosure"). Therefore, we conclude that the district court did not abuse its discretion by denying Kiles's motion for a mistrial based on a *Brady* violation. *See Rose v. State*, 123 Nev. 194, 206-07, 163 P.3d 408, 417

---

[2]We reject the State's argument that it did not commit a *Brady* violation because Kiles could have obtained the information by exercising due diligence.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

(2007) (reviewing the denial of a motion for mistrial for an abuse of discretion).

Lastly, Kiles claims that cumulative nature of the above-alleged errors entitles him to relief. However, as discussed above, Kiles suffered no prejudice from the only error discerned—the district court's unreasonable restriction of voir dire. Therefore, there can be no claim based upon cumulative error here. *McKenna v. State*, 114 Nev. 1044, 1060, 968 P.2d 739, 749 (1998) (concluding that a single error "does not, by itself, constitute cumulative error"). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

cc:  Hon. Douglas Smith, District Judge
     Gaffney Law
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk